PAGE VS. SMITH.

*Bill of sale, or assignment for benefit of creditors.*

The following instrument, "For value received, we hereby sell, assign and transfer to A. B. one lot of staves and heads, * * valued at $2,600; proceeds of same, when sold, to be applied to the payment of the said A. B. and other creditors," is not an absolute bill of sale, but an assignment for the benefit of creditors, and void for non-conformity to the statute. So *held*, where the indebtedness of the maker to A. B. was about $800.

APPEAL from the Circuit Court for *Winnebago* County.

Replevin, for a lot of staves and headings, which defendants, as sheriff and under-sheriff of said county, had seized in the spring of 1868, under a writ of attachment, as the property of Dedolph & Lipke, at the suit of one J. C. Smith, a creditor of said last-named firm. Dedolph & Lipke had a stave factory and store at New London, Waupaca county. On the 14th of November, 1867, they executed a bond in the penal sum of $60,000 to the plaintiff in this action, as trustee for the creditors named in the bond, conditioned to become void upon payment to said trustee of certain sums due said creditors, amounting to $30,843; and this bond was secured by a mortgage of the same date, covering, among other things, all the goods in their said store, and all the staves and headings at their said factory, and "all logs and material on hand" at said factory, "designed or suitable for the manufacture of staves and headings, or partially manufactured into the same, and all logs and material wherever located or selected," then owned by them. In December, 1867, one Turck, as agent for the plaintiff, went to New London, and, upon the order of Dedolph & Lipke (as he testifies), advanced to them $520 worth of groceries, and $255 in money, to pay insurance, and thereupon received from them the following instrument: "For

value received, we hereby sell, assign and transfer to
*Thomas Page* one lot of staves and heads (bbl.), amount-
ing to 10,800 set, now stored in the Ch. and N. W. Rail-
road depot at Oshkosh, Wisconsin, the same valued at
$2,600; proceeds of the same, when sold, to be applied
to the payment of the said *Thomas Page* and other cred-
itors.   New London, Wis., Dec. 17, 1867.   DEDOLPH &
LIPKE."   [Witnessed and stamped.]   Turck testifies
that he took the bill of sale the next day to Oshkosh,
and told the railroad agent at the depot where the
property was stored, that plaintiff had bought it, and
the agent promised to give him a receipt for the same,
whenever plaintiff got ready to ship it, stating that the
company did not receipt for property in store.   He also
testified that the staves and headings mentioned in said
"bill of sale" had been shipped from New London [to
Oshkosh] "the fall before" [viz., the fall of 1867]; and
that they were not covered by the chattel mortgage."
One Barron, as witness for defendants, stated that he
was station agent of the Ch. and N. W. Railway Com-
pany at Oshkosh; that the property in question com-
menced coming to that station on the 14th of November,
1867, and continued coming until the 25th of the same
month.   There was some evidence for defendants tending
to show that the railroad company was not notified of
the alleged sale to plaintiff previous to the seizure of the
property on the attachment.   There was no dispute as
to the rights of the attaching creditor, in case no title
passed to the plaintiff under the so-called "bill of sale."
There was proof that Dedolph & Lipke, in the fall of
1867, and spring of 1868, claimed to own property worth
about $60,000.

The court instructed the jury, *inter alia*, that, if
plaintiff, at or about the time of the execution of the bill of
sale, furnished Dedolph & Lipke with several hundred
dollars' worth of goods, as a consideration for said bill
of sale, and the same had not been repaid, and there was

no fraud in the transaction, and the property was delivered to plaintiff, then he was entitled to the possession thereof at the commencement of the suit. Verdict for the plaintiff; new trial denied; and defendants appealed from a judgment on the verdict.

*Gabe Bouck*, for appellants, to the point that the instruments executed by Dedolph & Lipke to plaintiff were both assignments for the benefit of creditors, cited *Norton v. Kearney*, 10 Wis. 448; *Sharpless v. Welch*, 4 Dal. 261 (*279); *Watson v. Bagaley*, 12 Pa. St. 164; *Beers v. Lyon*, 21 Conn. 604; *Page v. Weymouth*, 47 Me. 238; *Van Vleet v. Slauson*, 45 Barb. 317; and argued that, as such, they were void, because no bond had been executed and filed by the assignee, and the other requirements of ch. 63, R. S., as amended by ch. 64, Laws of 1858 (R. S. p. 411), were not complied with.

*Palmer, Hooker & Pitkin*, for respondent, contended that the bill of sale was not a voluntary assignment for the benefit of creditors. 1. The property conveyed by it was but a trifling portion of the property of Dedolph & Lipke. 2. The transfer was made for cash and goods advanced by plaintiff at the time. 3. The fact of Dedolph & Lipke's insolvency was not shown, but all the evidence on the subject goes to show that the value of their property was double the amount of their indebtedness. It cannot be seriously claimed that a conveyance by solvent parties of one-fortieth of their property, as security for money and goods advanced at the time, is a conveyance within the meaning of our statute providing for general assignments for the benefit of creditors.

COLE, J. We think that the instrument dated December 17, 1867, executed by Dedolph & Lipke, was not an absolute and unconditional bill of sale, making the plaintiff the absolute owner of the property, but was in the nature of an assignment for the benefit of creditors.

Page vs. Smith.

The property therein transferred was valued at $2,600, while the advances made by the plaintiff at the time of its execution did not amount to $800. Besides, the instrument provides that the proceeds of the property, when sold, were to be applied to the payment of the plaintiff "*and other creditors*," thus showing, upon its face, that it was an assignment for the benefit of creditors. According to the testimony of the witness Turck, who was the plaintiff's agent in the transaction of this business, the creditors to whom the surplus was to be paid were named in the bond given by Dedolph & Lipke to the plaintiff on the previous 14th of November. That bond was secured by the real estate and chattel mortgage of the same date. It is claimed by the counsel for the plaintiff that the execution of this instrument was an entirely separate and distinct transaction from the giving of this bond and the mortgages; that it conveys different property, and was accompanied by an immediate change of possession, and was for a new, valid consideration paid by the plaintiff when the same was executed. We think it would be quite difficult to sustain this view upon the face of the papers themselves. For instance, the chattel mortgage embraced the entire stock of goods, and all the property of every name and description belonging to Dedolph & Lipke on the 14th of November, 1867, including all staves, heading, logs and materials at their factory, manufactured or partially manufactured. And the station agent states that the property in controversy commenced coming to the depot November 14th, showing that a portion of it, at least, had been manufactured when the chattel mortgage was executed, and was embraced in it. But not to dwell upon this, the so-called bill of sale shows clearly upon its face that it was not intended to give the plaintiff an absolute and unconditional ownership of the property transferred. For he was to apply the proceeds to the payment of his own debt and the debts of other creditors,

thus making the plaintiff a trustee for such creditors, so far as that property was concerned.   It was therefore an assignment for the benefit of creditors (*Norton v. Kearney*, 10 Wis. 444), and was void because the statute upon that subject (ch. 63, R. S.) was not complied with.   Also see *Brahe v. Eldridge*, 17 Wis. 184.

In various ways the defendants asked the court below to so instruct the jury; but all their instructions upon that point were refused.   Their instructions, or several of them, involving this question, should have been given.

*By the Court.*— The judgment of the circuit court is reversed, and a new trial ordered.