Winner vs. Hoyt, Garnishee, etc.

WINNER, Appellant, vs. HOYT, Garnishee, etc., Respondent.

*April 7 — May 15, 1886.*

DEBTOR AND CREDITOR: VOLUNTARY ASSIGNMENT. *(1) Instruments construed together. (2) Parol evidence of intent. (3) Chattel mortgages, etc., held an assignment with preferences.*

1. Chattel mortgages and assignments of accounts, made in pursuance of the same agreement, at substantially the same time, for the same common purpose, and in relation to the same subject matter, must be construed together as one instrument.

2. Parol evidence is admissible to show that mortgages and assignments of accounts were executed by debtors with the intention of transferring all their assets to certain preferred creditors, to be converted by one of them into money and then divided among them *pro rata*.

3. Chattel mortgages and assignments of accounts transferring the entire property of insolvent debtors to certain of their creditors, with the intent that one of such creditors, for himself and as agent and trustee for the others, should take immediate possession and convert such property into money and divide the same *pro rata* among such favored creditors, are *held* to have been, in effect, a general assignment with preferences, and void as to the other creditors. TAYLOR, J., dissents.

APPEAL from the County Court of *Milwaukee* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

The following facts were mostly found by the trial court. The balance appear or are clearly inferable from the undisputed evidence.

April 15, 1885, the debtors, E. S. Hoyt and Wesley Kinney, were wholesale liquor dealers in Milwaukee, under the firm name of E. S. Hoyt & Co., and had been since 1877. April 15, 1885, the firm was indebted to *Frank M. Hoyt*, Wisconsin Marine & Fire Insurance Company Bank, Alice McLeod, Ephraim Mariner, and Brown, Merritt & Moore, respectively, in the aggregate amount of $17,184.68, and to other parties, including the plaintiff, in the sum of about $6,000, making in all over $23,000. The assets of the firm consisted of stock, furniture, fixtures, etc., then on hand, and estimated to be worth $5,000 or $6,000; and outstanding accounts, amounting to about $10,000, from which it was then estimated that seventy-five per cent. could be realized, making the complete value of the assets about $13,000. The firm had no other property, except a horse, harness, and delivery wagon. Neither of the firm had any other property, except Mr. Kinney, who had a life interest in part of a homestead which was mortgaged to Mrs. Alice

McLeod. At the time named Mr. Kinney had been confined to his house by sickness for some days. Mr. E. S. Hoyt was then traveling for the firm. The store and business was then in charge of their book-keeper, porter, and a clerk. E. S. Hoyt is the uncle of the garnishee, *Frank M. Hoyt*, and had been his guardian. The garnishee had been in the habit occasionally of looking over the books of the firm in the interest of his, uncle and himself. In the last of March, 1885, he was informed by his uncle that the firm were having hard work to get money enough to pay their bills as they became due. About that time the garnishee examined the accounts, and looked over the books, and told Mr. Mariner the firm were getting into close quarters, and suggested to him that he better take a judgment note for his debt. Judgment notes were then held by Mrs. McLeod, the bank, and *Frank M. Hoyt*. Mariner took a judgment note, April 2, 1885. The firm insisted, for about a week, that they could pull through. E. S. Hoyt in the meantime went into the country. On his return, a week or ten days after, *Frank M. Hoyt* again went over the books, and became alarmed at the situation of affairs. He then informed Mr. Mariner and also Mr. Ferguson, the cashier of the bank, of the condition in which he found the affairs. In pursuance of an arrangement between the three, they met the next day, April 13, 1885, and talked over what had better be done. Nothing was done until Wednesday, April 15, 1885, when they went to Mr. Kinney's house and insisted upon their money, security, chattel mortgages, and assignments of the accounts, etc. Mr. Kinney at first thought he could go on, and wanted Mr. Ferguson to let him have more money to go on with, which he declined to do; and so Kinney finally consented to give chattel mortgages and assignments as requested. Upon the evening of the same day, *Mr. Frank M. Hoyt* drew up the chattel mortgages, and he and Mr. Mariner and Mr. Ferguson went to the

house of Mr. Kinney the next day, April 16, 1885, and the following papers were thereupon executed by Kinney in the name of the firm, all bearing that date, to wit: (1) A chattel mortgage in the usual form upon the stock, safe, furniture, fixtures, and all other property in the store, to Ephraim Mariner, to secure a note of $1,635.05, dated April 2, 1885, due on demand, with $100 indorsed, and to secure which note said Kinney, in the name of the firm, over the same date, assigned to said Mariner certain scheduled accounts, etc., amounting in the aggregate to $976.58. (2) A chattel mortgage, in the same form, upon the same stock, safe, furniture, fixtures, and other property in the store, to Alice McLeod, to secure a note of $4,000 dated April 2, 1883, due fifteen days after the date thereof, and to secure which note said Kinney, in the name of the firm, over the same date, assigned to said Alice McLeod certain scheduled accounts, etc., amounting in the aggregate to $2,485.81. (3) A chattel mortgage, in the usual form, upon the stock, safe, furniture, fixtures, and other property in the store, to the Wisconsin Marine & Fire Insurance Company Bank, to secure a note of $5,000 dated April 13, 1885, due on demand; also another chattel mortgage upon a horse, delivery wagon, and harness, to said bank, to secure the same note; and to secure which note said Kinney, also in the name of the firm, over the same date, assigned to said bank certain scheduled accounts, etc., amounting in the aggregate to $3,633.70. (4) A chattel mortgage, in the usual form, upon the stock, safe, furniture, fixtures, and other property in the store, to *Frank M. Hoyt*, to secure a note for $3,160, and interest, dated April 13, 1885, due on demand; also a chattel mortgage, in the usual form, upon the same property, to *Frank M. Hoyt*, to secure a note for $2,749.63, dated February 20, 1884, due on demand; and to secure which two last-named notes said Kinney, in the name of the firm, over the same date, assigned to said *Frank M. Hoyt* certain scheduled accounts,

etc., amounting in the aggregate to $3,443.50; and also to secure which two last-named notes said Kinney, in the name of the firm, over the same date, assigned and set over to the said *Frank M. Hoyt* "all and singular" the "notes, accounts, claims, demands, debts due, and to become due, of every name, nature, and description" belonging to said firm, thereby authorizing him to ask, demand, sue for, collect, and, upon such terms as he should see fit, compromise the same, or any of them, applying the proceeds towards the payment of said notes and returning the balance over and above the costs of such collection and the amount due on said notes, to said firm.

The mortgages were all made and delivered at one time, and the assignments of accounts and credits were all made to bear even date with the mortgages. The firm was known to be insolvent by each of the mortgagees and assignees at the time of receiving the mortgages and assignments. The property so mortgaged, and the accounts, etc., so assigned, covered all the property of the firm, and all the property of the respective members of the firm, not exempt, and were not worth to exceed sixty per cent. of the debts they were so given to secure. The note of $3,160 was for a debt owing by the firm to the said bank, or to Ferguson on account of the bank, and the note for that amount, and the mortgage and assignments to secure the same, were taken in the name of *Frank M. Hoyt* for the benefit of the bank or Ferguson, and *Frank M. Hoyt* had no other interest therein than to make collections and account for the same. Mrs. McLeod was the daughter of Mr. Kinney, and *Frank M. Hoyt* took it upon himself to provide for her claim, as it was for borrowed money, and she a woman; and so did obtain the securities in her name as mentioned.

*Frank M. Hoyt* took possession of the entire stock, safe, furniture, fixtures, and property in the store, under the several chattel mortgages, in the forenoon of April 16, 1885;

and also took possession of all the accounts, etc., covered by said several assignments. Judgments were entered up on the $5,000 note in favor of the bank, April 16, 1885; on the $2,743 note in favor of *Frank M. Hoyt*, April 16, 1885. Garnishee summons were served on *Frank M. Hoyt*, April 17, 1885, one in favor of the bank on the $5,000 note; one in favor of Mrs. McLeod on the $4,000 note; and one in favor of Brown, Merritt & Moore, on a claim of $650, for whom Mr. Mariner was attorney or counsel. *Frank M. Hoyt* helped make the papers in the garnishees in favor of the bank and Mariner. April 23, 1883, it was agreed in writing, in effect, by the several mortgagees, that upon *Frank M. Hoyt's* offering the stock, etc., for sale, and failing to sell for what he might deem to be a fair price, then it should be bid in by him for the benefit of all the mortgagees, and thereafter sold by him for their benefit, and the proceeds divided among them in proportion to their several claims. April 29, 1885, the property covered by the several mortgages was sold by *Frank M. Hoyt*, in pursuance of the agreement stated, and bid in by Mr. Mariner, at eighty per cent. of the invoice cost price; and the amount realized by the garnishee therefrom was $4,332.27. At the time of the trial he had also collected on the old accounts, etc., in the aggregate $4,435.01, including expenses of collection. The moneys so collected were kept in common, without any attempt to apportion them to the several assignees. The mortgagees and assignees all acted in concert in taking the several securities, and with the intention of having *Frank M. Hoyt* immediately take possession of all the property covered by the several mortgages and assignments, and convert the same into money, and apply the same on their respective claims *pro rata* according to their several amounts. In executing the several mortgages and assignments, Mr. Kinney expected and intended the same things, and that if there should be anything left of such

proceeds after paying those claims, then it would go to the unsecured creditors. On the return of E. S. Hoyt, three days after the execution of the papers, he fully sanctioned and ratified all that had been done.

April 23, 1885, the plaintiff commenced an action against said firm upon a debt accruing prior to April 16, 1885, and judgment was recovered thereon against said firm, May 28, 1885, for $2,203.18, in the county court for Milwaukee county. An *alias* execution was issued thereon to the sheriff of said county, and a garnishee summons was issued thereon, and served on said *Frank M. Hoyt*, August 7, 1885. August 25, 1885, the garnishee answered, denying all indebtedness and liability to the firm, or having in his hands any property belonging to the firm. The plaintiff took issue on the answer. November 16, 1885, the cause was tried, and upon the foregoing state of facts the court found that the garnishee was not liable, and was entitled to judgment dismissing the action, with costs against the plaintiff, and judgment was thereupon entered accordingly, November 28, 1885, in favor of said garnishee and against the plaintiff. From that judgment, and the whole and every part thereof, the plaintiff appeals.

For the appellant there was a brief by *Joshua Stark*, and oral argument by *S. U. Pinney* and *Chas. E. Shepard*.

For the respondent there was a brief by *E. Mariner & F. M. Hoyt*, attorneys, and a separate brief by *David S. Ordway*, of counsel; and the cause was argued orally by *Mr. Hoyt* and *Mr. Ordway*.

CASSODAY, J. The statutes expressly provide that "all voluntary assignments or transfers whatever of any real estate, chattels real, goods, or chattels, rights, credits, moneys, or effects for the benefit of or in trust for creditors, shall be void as against the creditors of the person making the same unless" executed as therein required. Sec. 1694,

R. S. So the statute provides that "any and all assignments . . . made for the benefit of creditors, which shall contain or give any preference to one creditor over another creditor, except for the wages of laborers, . . . shall be void." Sec. 1, ch. 349, Laws of 1883.

Was the whole transaction detailed above, when taken together, a voluntary assignment, within the meaning of the above statutes? The six chattel mortgages and the five assignments were all made in pursuance of the same agreement, and substantially at the same time, and for the same common purpose, and in relation to the same subject matter, and must, therefore, upon well-settled principles, be construed together as constituting one paper in law. *Norton v. Kearney*, 10 Wis. 443; *Gillmann v. Henry*, 53 Wis. 468; *Herbst v. Lowe*, 65 Wis. 316; *Backhaus v. Sleeper*, ante, p. 68; *Berry v. Cutts*, 42 Me., 445; *Burrows v. Lehndorff*, 8 Iowa, 103; *Van Patten v. Burr*, 52 Iowa, 518.

It has often been held by this court that a conveyance or bill of sale absolute in form may nevertheless be shown by parol evidence to be nothing more than a mortgage or security. Whether it be one or the other is very often a question depending wholly upon the intention. So whether a given written instrument constitutes a conditional sale, a conveyance, or mortgage, is very often a question of intention, to be determined by contemporaneous facts and circumstances. *Rockwell v. Humphrey*, 57 Wis. 410, and cases there cited. So we may resort to contemporaneous facts and circumstances to determine the intent with which the six chattel mortgages and five assignments in question were given.

The garnishee had no personal interest in the transaction except to the extent of his claim for $2,749.63. The note of $3,160, and the two mortgages, and the assignment to secure the same, were taken by him in his own name merely as a trustee of an express trust. Sec. 2607, R. S.; *Water-*

*man v. C., M. & St. P. R. Co.* 61 Wis. 468. In equity they belonged to the bank, and were taken for the benefit of the bank. The several mortgages and assignments covered all the property of the firm and of the individual partners (except what was exempt), and were executed and taken with the expectation and intention that the garnishee should take immediate possession, convert all into money, as he did, and then that the proceeds should be divided among the several mortgagees and assignees *pro rata.* In all those things he was manifestly to act as the agent and trustee of such mortgagees and assignees except as to his own claim. He sorted out and designated the different accounts, etc., to be specifically assigned to the respective parties. He took a general assignment of all other assets of the firm to himself, with an agreement to return the surplus, if any, to the members of the firm. The favored parties were notified and got together for consultation on his suggestion, and for one of them he assumed to act without consultation. One of the favored parties was a daughter of one member of the firm, and another was a nephew of the other. Prior to the transaction the garnishee had frequently looked over the books of the firm in the interest of his uncle, as well as himself, and the transfers made were apparently in pursuance of an understanding with the uncle. The firm was known to all the parties to be hopelessly insolvent at the time. The only hesitancy in executing the papers as requested, was the hope expressed by Mr. Kinney that some of the parties would let the firm have more money, and thus enable them to go on. When that was declined, there was apparently no more expectation or thought of going on with the business. The garnishee aided in making the papers to garnishee himself in favor of some of the secured parties on the same day. The numerous acts performed in the transaction of April 16, 1885, and the celerity with which they were executed, indicated a purpose not to allow

any of the unsecured creditors to intervene.   To our minds the whole transaction, taken together, was, in substance and effect, an assignment of all the property of the firm and all the property of the members of the firm, not exempt from execution, to the garnishee for the benefit of the several mortgagees and assignees named, and with the intent to give them a preference over the other creditors.   This we think is the logical result of the decisions of this and other courts upon similar transactions.

Thus, in *Norton v. Kearney*, 10 Wis. 443, the surety for a firm of merchants took a bill of sale, from the firm, of their entire stock.   Then he gave back to the firm a writing, whereby he agreed to pay three of their notes, upon which he was liable as surety, and save the firm harmless therefrom; and further agreed to dispose of the goods to the best advantage, and, if the proceeds exceeded in amount the sums specified, he would " faithfully pay such overplus to the other *bona fide* creditors " of the firm *pro rata*.   The two instruments were construed together, and held to be an assignment for the benefit of creditors, with a preference to those to whom the assignee stood in the relation of surety.   DIXON, C. J., speaking for the court, there said: " No particular form of words or instrument are necessary to constitute a valid assignment of chattels or things in action.   Any valid transfer by which the uses and trusts for which the property is assigned, and to which it is to be appropriated by the transferee, are intelligibly indicated and declared, is an assignment."   In *Backhaus v. Sleeper, ante*, p. 68, prior mortgages, given within sixty days before making an assignment, were held, by references to them therein, to be imported into the assignment, which was construed in connection with them as one transaction.   Substantially the same was held in *Van Patten v. Burr*, 52 Iowa, 518. In that case *Burrows v. Lehndorff*, 8 Iowa, 103, was approved and some of the intervening cases in that state

relied upon by counsel for the defendant were distinguished. The same was held in *Berry v. Cutts*, 42 Me. 445, where it was also held that such preference might be made to appear by parol. In *Page v. Smith*, 24 Wis. 368, the debtors owed Page $775, and executed and delivered to him an instrument to the. effect: "For. value received, we hereby sell, assign, and transfer to T. P. one lot of staves and heads, . . . valued at $2,600, proceeds of the same when sold to be applied to the payment of the said T. P. and other creditors." It was held to be void for non-conformity to the statute, notwithstanding there was evidence that the debtors had other property, but they were insolvent. That case was distinguished in *Carter v. Rewey*, 62 Wis. 555, on the grounds that in the latter case the instrument was a formal chattel mortgage, and differed in other respects. In the case of *Carter v. Rewey* it did not appear that the mortgage covered all the property of the debtor; and it did appear that the mortgagor expected to procure assistance from a relative and to go on with his business. Moreover, the transaction occurred before the statute forbidding preferences. Whether the cases of *Page v. Smith* and *Carter v. Rewey* are in strict harmony or not, it is certain the case of *Carter v. Rewey* should not be extended, and possibly *Page v. Smith* might properly be restricted. The case at bar is likewise distinguished from *Little Wolf Imp. Co. v. Jackson, ante*, p. 42. In fact, the principle here asserted was there sanctioned. In *Backhaus v. Sleeper, supra*, it was indicated that while the statute. would be liberally construed for the purpose of carrying out the intention of the legislature in securing an equal distribution among all the creditors of an insolvent debtor, yet that a more rigid rule would be applied, if necessary, to prevent the frustration of such intent.

The mere fact that the transfer was effected by eleven different instruments, instead of one, did not prevent the

transaction from being, in substance and effect, an assignment. It is not so much the form as the effect of the instrument which is to be considered. Thus a lease reserving rent in trust for the benefit of the lessor's creditors was held to be an assignment. *Lucas v. Sunbury & E. R. Co.* 32 Pa. St. 458. So a power of attorney to collect certain moneys and pay them to certain creditors in a prescribed order of preference, was held to be virtually an assignment, notwithstanding the power of revocation. *Watson v. Bagaley*, 12 Pa. St. 164. So, where an insolvent debtor conveyed and assigned all his property, real and personal, valued at about $12,000, to his son, to whom he owed $500, subject to a mortgage of $500, and took back a bond for the balance of $11,000 secured by mortgage on the land payable in annual instalments of $500 each, with interest, and then, three weeks afterwards, assigned the bond and mortgage to certain of his creditors in payment of his debts, it was held that the transaction was in effect an assignment with a preference, and illegal and void as against creditors whose claims were thereby hindered and delayed. *Owen v. Arvis*, 26 N. J. Law. 22. See, also, *First Nat. Bank v. Knowles*, [28 N. W. Rep. 225; 67 Wis.—.]

The statutes of Missouri concerning voluntary assignments are, if anything, less stringent than our own, but the conclusion reached in that state by Mr. Justice MILLER and Judges McCRARY, TREAT, and KREKEL, of the federal courts (Judge BREWER reluctantly acquiescing), is to the effect that whenever an insolvent debtor, by any form of instrument or instruments, disposes of his entire property, not exempt, or substantially all of his property, for the benefit of a certain number of his creditors, then the transaction is in legal effect an assignment for the benefit of creditors, with a preference, and hence in violation of the statute, and void. *Freund v. Yaegerman*, 26 Fed. Rep. 814; *Martin v. Hausman*, 14 Fed. Rep. 160; *Kellog v. Richardson*, 19 Fed. Rep.

70; *Perry v. Corby*, 21 Fed. Rep. 737; *Clapp v. Dittman*, 21 Fed. Rep. 15; *Clapp v. Nordmeyer*, 25 Fed. Rep. 71.

The question presented is not whether an insolvent debtor may secure a creditor, but whether insolvent debtors may by way of chattel mortgages and assignments to certain creditors, as in the case before us, assign and transfer their entire property for the benefit of such creditors, with the intent of having one of such creditors, for himself and as agent and trustee for the others, take immediate possession, and convert the same into money, and then to divide the same *pro rata* among such favored creditors. In other words, may such insolvent debtors, by means of such chattel mortgages, assignments, and verbal understanding, accomplish the very object they would have sought to attain had they in form made a general assignment to the garnishee with the same preferences to the same favored creditors, without bringing the transaction under the same condemnation of the statutes? If we look to the substance and purpose of the whole transaction, instead of mere forms, there seems to be no escape from the conclusion that it was in legal effect a voluntary assignment or transfer of all the property of the debtors for the benefit of the particular creditors named, and hence with a preference. Such being the substance of the transaction, it was in direct violation of the statutes. It is no answer to say that to sustain an attachment or garnishment, in such a case, would simply substitute another creditor to be favored, instead of those selected by the debtors. We are not legislating. The statute may be incomplete to perfectly secure the object intended. If the system devised is incomplete, it is for the legislature to complete it. We can do no more than to determine whether the transaction comes within the condemnation of the statute. We are clearly of the opinion that it does.

TAYLOR, J. The facts in this case are very plain, and there is no dispute as to them. The appellant, a creditor of

Ebenezer S. Hoyt and Wesley Kinney, obtained a judgment on the 28th of May, 1885, against them for $2,203.18, and issued execution against said Hoyt & Kinney on said judgment, and the respondent was summoned as a garnishee upon said execution. The respondent answered the garnishee process, and denied all liability or indebtedness to the said Hoyt & Kinney, and also denied that he had any property in his hands or under his control belonging to the said Hoyt & Kinney. Upon this answer issue was taken. On the trial the following facts were established:

That on and before the 16th of April, 1885, the said Ebenezer Hoyt and Wesley Kinney were partners in business in the city of Milwaukee, and were on that day indebted in large sums of money to divers persons, which they were unable to pay in full. Among such creditors were *Frank M. Hoyt*, to whom they were indebted upon two promissory notes, one dated February 20, 1884, for the sum of $2,749.63, and one dated April 13, 1885, for the sum of $3,160; to Ephraim Mariner, $1,535.05; to Alice McLeod, $4,000; Marine & Fire Insurance Company Bank, $5,000. On the 13th of April, 1885, the said Hoyt & Kinney gave five chattel mortgages upon all the property of said firm: two to said *Frank M. Hoyt*, the one to secure the payment of the said sum of $3,160, and the other to secure the payment of the said sum of $2,749.63; one to Ephraim Mariner to secure the payment of said sum of $1,535.05; one to Alice McLeod to secure the sum of $4,000; and one to the Fire Insurance Company Bank to secure the payment of $5,000. There was also another chattel mortgage given to the bank, to secure the payment of the same debt of $5,000, upon one horse, delivery wagon, and one harness. These mortgages covered the same stock of goods in the possession of and owned by the said firm of Hoyt & Kinney, except the second one given to the bank on the horse, delivery wagon, and harness. In addition to these several mortgages the said firm, for the purpose of further securing said debts, made

four separate assignments of accounts and debts due to said firm, one to said *Frank M. Hoyt*, one to said Mariner, one to said Alice McLeod, and one to said bank. The following is the form of the several assignments:

" For a valuable consideration to us in hand paid, we, E. S. Hoyt & Co., do hereby sell, assign, transfer, and set over to *Frank M. Hoyt* all the accounts described in the schedule hereto attached marked ' A,' and all claims and demands, of every nature, due or owing to us from the persons and firms named in said schedule, and from each and every of them, as collateral security to two certain promissory notes executed by us to said *Frank M. Hoyt*, one for the sum of $2,749.63, dated February 20, 1884, and the other for the sum of $3,160, dated April 13, 1885.

" Witness our hands, this 16th day of April, 1885.

" E. S. HOYT & Co."

To this assignment was attached a schedule of the notes and accounts assigned and referred to in the body of the assignment. The other assignments were in the same form, except as to the name of the assignee and property assigned, and for the purpose of further securing the payment of the said debts due the other parties, each assignment being for specific notes and accounts mentioned in the schedules attached to such assignments.

*Frank M. Hoyt* took possession of the property mentioned in the several chattel mortgages and assignments on the day the same were made, for the benefit of all the parties interested, and afterwards the said mortgagees and assignees made and executed the following agreement:

" This agreement, made this 23d day of April, 1885, by and between the Wisconsin Marine & Fire Insurance Company Bank of the first part, Ephraim Mariner of the second part, Alice McLeod of the third part, and *Frank M. Hoyt* of the fourth part, witnesseth:

" *Whereas*, heretofore, to wit, on the 16th day of April, the

firm of E. S. Hoyt & Co. were indebted to the said bank in the sum of $5,000, and to the said Ephraim Mariner in the sum of $1,565, and to the said Alice McLeod in the sum of $4,000, and to said *Frank M. Hoyt* in the sum of $5,909.63, and

"*Whereas,* on said 16th day of April, E. S. Hoyt & Co. executed and delivered to the parties hereto, respectively, for the purpose of securing said debts, five certain chattel mortgages, bearing date of that day, on the stock of wines, liquors, and other property contained in the store formerly occupied by said E. S. Hoyt & Co., known as 102 West Water street, and the parties hereto have taken possession of said stock and property under and by virtue of the authority in them vested by said chattel mortgages, and are about to sell the same at public auction. ·

"Now, therefore, it is agreed by and between the parties hereto that when said stock and property is offered for sale under said chattel mortgages, if a bid shall not be made for the same for such amount as to the said *Frank M. Hoyt,* or to such person as he shall·designate to represent him at such sale, shall be deemed a fair price for such stock and property, then and in that·event the property may be bid in at such sale by said *Hoyt* or his representative, for the account and benefit of all parties hereto, and that stock and property, when so bid in, shall be sold thereafter for the benefit of all parties concerned herein in such manner as to said *Hoyt* shall seem desirable. The proceeds therefrom, after paying all costs, charges, and expenses of making such sale as shall seem necessary to said *Hoyt* to dispose of said stock and property to advantage, to be divided among the parties hereto in the proportion of their several debts hereinbefore mentioned.

"In testimony whereof, the said Wisconsin Marine & Fire Insurance Company Bank have caused these presents to be

subscribed on the day and year above written, and the other
parties hereto have hereunto set their hands and seals.

                  " D. FERGUSON, Cash. [Seal.]
                  "FRANK M. HOYT.   [Seal.]
                  " ALICE McLEOD.    [Seal.]
                  "E. MARINER."      [Seal.]

The court found that this agreement was made and exe-
cuted on the 23d of April, 1885, and I find nothing in the
evidence which tends to show that his finding on this point
is not supported by the evidence.

I think that it must be taken as sufficiently established
by the evidence that all the property of the members of the
firm, both firm and individual property, was mortgaged and
assigned to the parties mentioned. It must also be admitted
that the property so mortgaged and assigned to said cred-
itors was not more than sufficient to satisfy their claims
against the firm, and that this fact was known to both the
creditors and debtors at the time the mortgages were exe-
cuted. It must also be admitted that it was expected by all
parties that the business of the firm would be immediately
suspended and possession taken by the mortgagees. It must
also be admitted that the firm intended to prefer the claims
of these creditors over their other creditors, and that these
creditors knew that their claims were to be preferred, and
they intended to get a preference of their claims over the
claims of the other creditors.

On the part of the learned counsel for the appellant it is
insisted that these mortgages and assignments are void as
to them, not because there was any fraudulent attempt in
fact to secure the payment of their debts, which are admit-
ted to be just debts due from the firm of Hoyt & Co. to
them, nor because the giving of the mortgages and assign-
ments of the accounts and notes to them was any evidence
of an intent to hinder and delay the other creditors, but
upon the sole ground that the giving of such mortgages and

assignments was in fact a voluntary assignment, within the meaning of the statute on the subject of assignments, and was therefore void upon two grounds: (1) because such assignment was not executed as prescribed by the statute; and (2), being an assignment in substance, it was void because it preferred the creditors to whom it was given over the other creditors of the firm, and was not made for the benefit of all their creditors.

There are some questions in relation to assignments which must be considered settled, so far at least as this court is concerned; and the *first* and most material of these questions is that, until the statute of 1883 was passed, a person making a voluntary assignment under the statute might prefer some of his creditors over others in the distribution of his assets; *second*, that he might, before making a general assignment, by any proper and lawfully executed instrument secure the payment of one or more of his creditors in preference to his other creditors, and that when such security was given to secure an honest debt, and not intended to hinder or delay the other creditors, it must be held valid, notwithstanding the debtor afterwards made a general assignment for the benefit of all his creditors. Since the passage of ch. 349, Laws of 1883, the insolvent debtor is not prevented from giving a security to one or more of his creditors to secure the payment of his or their debts, and such security so given is valid as between the debtor and the other creditors, even though followed by an assignment within sixty days after the same is given, and can only be avoided by the assignee as prescribed by the statute.

In the case of *Wachter v. Famachon*, 62 Wis. 123, Justice ORTON in his opinion says: "There is nothing difficult in the meaning and proper construction of that act. Before it was passed creditors might be preferred even in assignments. This is prohibited by the first section, and renders the assignment void. The act does not pretend to

prohibit a debtor from preferring one creditor to another in the payment or security of his claim generally, but only such preference by assignment, and then makes void any other preferences and conveyances made within sixty days prior to an assignment. Unless an assignment is made, all preferences are as lawful as they were before the act was passed, and all preferences not within the act are now as lawful as they always were." The same ruling was made by this court in *Anstedt v. Bentley*, 61 Wis. 629, 636; and in this case it was also held that, even where a general assignment was made after security given to one or more creditors within sixty days previous to making the same, such security would not be held void at the suit of another creditor for his sole benefit, but only at the suit of the assignee for the benefit of all the creditors. Page 636.

Under these decisions we think it clear that the right of the insolvent debtor to pay or secure the payment of one or more of his creditors, to the prejudice of his other creditors, when such security given is not followed by a general assignment within sixty days after giving such security, is just as ample and untrammeled as it was before the passage of ch. 349, Laws of 1883; and that, when followed by such assignment within the limited sixty days, the preferences are held void, not for the benefit of any one or more creditors, but for the benefit of all the creditors. The statute simply gives the debtor the right, if he chooses to avail himself of such right, to revoke the preferences given, within sixty days after giving them, by making a general assignment for the benefit of all his creditors. But the statute does not give the other creditors the right to revoke such preferences in any case. There is therefore no greater or other reason for holding the mortgages and transfers of the choses in action in this case to the creditors intended to be secured in the payment of their claims an assignment under the statute than there would be if the statute of 1883 had not been passed.

The question comes down to this proposition, Is a chattel mortgage an assignment under the statute? This proposition has been answered in the negative by this court in several cases. *Carter v. Rewey*, 62 Wis. 552; *Little Wolf River Imp. Co. v. Jackson, ante*, p. 42. It is claimed, however, that the cases cited do not cover all the facts in this case, and that it is distinguishable — (1) because there were several chattel mortgages given at the same time to secure several creditors; (2) that the mortgages in this case covered all the assets of the debtors, and left nothing for the other creditors; and (3) that the parties taking the chattel mortgages acted in concert, and with the understanding that, if the assets were insufficient to pay all of their debts in full, they should share *pro rata*.

Do these additional facts, if they are facts, change the securities given into an assignment under the statute, and so make it void? To my mind, it is clear that they cannot and do not make that an assignment which is not substantially such in the absence of these facts. In the first place, to give them such an effect is to give them a construction which it is evident was not intended by the parties making them. The creditors taking such securities acted by their attorneys, who cannot be supposed to have been ignorant of the fact that an assignment under the statute was void if not executed as required by such statute; and also that an assignment giving preferences was also void under ch. 349, Laws of 1883. It is evident, therefore, that it was not the intent of the parties to make an assignment when they took these securities but studiously avoided the making of such an assignment.

Does the fact that the mortgages cover all the property of the debtors make them an assignment? It seems to me that that fact has no force in converting the mortgages into an assignment. The amount of the property covered by a mortgage cannot in any way change the nature of the instrument. If the property covered is very much greater in

value than is necessary to secure the debt, it may be evidence of an intent to hinder, delay, or defraud the other creditors of the debtor, but it is nevertheless a mortgage. It would hardly be logical to say that a debtor may give a mortgage upon a part of his property when such part is ample to secure the debt, and yet that he may not give a mortgage on the whole of his property to secure another debt when such whole is not even adequate security. It has been frequently held that the fact that all the property of the debtor is given to secure the payment of one or several debts due to one or several creditors does not make such transfer or transfers equivalent to an assignment for the benefit of creditors. See *U. S. v. McLellan*, 3 Sumn. 350, and cases cited; and *Bouchaud v. Dias*, 1 N. Y. 201; *U. S. v. Clark*, 1 Paine, 629; *U. S. v. Hooe*, 3 Cranch, 73.

In the case of *U. S. v. McLellan*, Justice STORY says: " I take the naked question, then, stripped of all unimportant circumstances, to be whether a conveyance by a debtor, known to be insolvent, of all his property to one or more creditors in discharge of their own liabilities, not exceeding the amount due to and payable by them, and not for the benefit of the creditors at large, or of any other creditors than the immediate grantees, is such a voluntary assignment as is within the purview of the section of the act of 1799. . . . I do not feel warranted in saying that such conveyances as the present are voluntary assignments for the benefit of creditors, within the meaning of the act, unless, indeed, it should be shown that they were made with the intent to evade the priority given by the act." This case presented a much stronger case for holding the conveyances an assignment than the present case. The act referred to was an act for the protection of the United States in the distribution of the estates of insolvent persons. The act reads: " In all cases of insolvency, or when any estate in the hand of the executors, administrators, or as-

signees shall be insufficient to pay all the debts due from the deceased, the debts due to the United States on any such bond or bonds [for duties] shall be first satisfied. And the cases of insolvency mentioned in this section shall be deemed to extend as well to cases in which a debtor, not having sufficient property to pay all his debts, shall have made a voluntary assignment thereof for the benefit of his creditors."

Before the decision in the case above cited the United States courts had held that the preference secured to the United States attached when there had been a general assignment for the benefit of his creditors by the insolvent debtor, and did not apply to a case where the debtor was insolvent but no assignment had been in fact made. In the case considered the United States had a right which depended upon the fact of a voluntary assignment. It might well have been urged that the right could not have been defeated by another conveyance which in fact transferred all his property for the benefit of a part of his creditors, to the exclusion of all others.

Under our statute no creditor of an insolvent debtor has any preference over another, nor has he any right to demand that the debtor shall not prefer his other creditors to him, unless he voluntarily chooses to make an assignment for the benefit of all his creditors. The creditor has no power to compel a voluntary assignment or an equal distribution of the assets of his debtor in any case. The following and many other cases fully sustain the doctrine of the cases above cited: *Lampson v. Arnold,* 19 Iowa, 479; *Hutchinson v. Watkins,* 17 Iowa, 475; *Farwell v. Howard,* 26 Iowa, 384; *Carson v. Byers,* 25 N. W. Rep. 826; *Cadwell's Bank v. Crittenden,* 66 Iowa, 237; *Jaffray v. Greenbaum,* 64 Iowa, 492; *Johnson's Appeal,* 103 Pa. St. 373; *Hewitt v. Huling,* 11 Pa. St. 27; *Ridgway v. Stewart,* 4 Watts & S. 383; *Manufacturers' & M. Bank v. Bank of*

*Pa.* 7 Watts & S. 335; *Marden v. Babcock*, 2 Met. 104; *Henshaw v. Sumner*, 23 Pick. 446; *Dias v. Bouchaud*, 10 Paige, 461; *Van Buskirk v. Warren*, 4 Abb. Dec. 457; *Dunham v. Whitehead*, 21 N. Y. 131, 133; *McClelland v. Remsen*, 3 Abb. Dec. 74; *Leitch v. Hollister*, 4 N. Y. 215; *Barker v. Hall*, 13 N. H. 298; *Low v. Wyman*, 8 N. H. 536; Bish. Assignm. 103.

It seems to me that when it is once admitted that the debtor, although insolvent, may prefer the debt of one creditor over another, except when he makes a voluntary assignment in favor of all his creditors, there is no ground for holding that he may prefer such creditors by giving security on a part of his assets, and that he may not secure such creditors upon the whole of his assets; and if the instrument executed to secure such creditor or creditors is not in fact in the nature of an assignment, it cannot be construed into an assignment because it in fact turns over all the assets to secure one or more creditors. If a mortgage of a part of the assets cannot be construed as an assignment under the statute, a mortgage of the whole assets cannot be so construed.

The object of our statutes on the subject of voluntary assignments was not, as this court has repeatedly held, to prevent an insolvent debtor from preferring the debt of one creditor to the debt of another, nor to compel or encourage the making of voluntary assignments, but simply to protect the creditors from injury, so far as possible, when the debtor resorted to that method of placing his assets beyond the reach of the ordinary remedies of the creditor to subject his property to the payment of his debts. The object of the statute is well stated by the learned counsel for the respondent, in their brief: "Prior to the passage of the law regulating voluntary assignments, an insolvent usually assigned his estate to some one who, on account of previous relations, was inclined to favor the debtor,— very often his

clerk, frequently to a person wholly irresponsible. So it usually happened that unless the insolvent was able to compromise with his creditors, and resume his estate, it was frittered away without benefit to the creditors. This state of things forced the legislation which has resulted in ch. 80, R. S., as amended." All the provisions of the statute show that its object was as stated above, and not to secure an equal distribution of the assets of the insolvent; and the passage of ch. 349, Laws of 1883, only enjoins such equal distribution when the debtor shall make a voluntary assignment. He is still at liberty to make such preferences as freely as he was before its passage, so long as he does not choose to make a voluntary assignment for the benefit of his creditors. See *Wachter v. Famachon* and *Anstedt v. Bentley, supra.* When a debtor makes a transfer directly to his creditor or creditors to secure the payment of his or their debts, none of the protections secured to the creditors by the assignment law are necessary. The creditor has the possession and control of his debtor's assets, and his self-interest is sufficient to stimulate him to make the most of his security.

If security given to one or more creditors to secure the payment of his or their debts upon all the property of the debtor is in effect an assignment under the statute, it must be held so upon the ground that it conveys all the property to such creditors, or upon the ground that it is an unlawful preference, or upon both grounds combined. As we have shown, the fact that a preference has been given cannot change the security into an assignment, and the reason for holding it an assignment must rest solely on the ground that the instrument or instruments convey all the assets of the debtor to the particular creditors named. The right of preference being conceded, this fact does not seem sufficient, in my mind, to justify a court in construing the contract between the parties contrary to their express intention, and in complete contradiction of the language of the written

contract between the parties, as well as its legal effect and substance.

If the writings in this case are an assignment in substance, it is so simply because the debtor has given all his assets to the preferred creditors. If, therefore, he permits such thing to be done in any other way, there would be the same reason for holding the transaction an assignment. Had he given judgment notes, or permitted the creditors whom he desired to prefer to take judgment upon confession, or in any other way, the same result would follow, and consequently the same construction should be given to such transaction. And why should not the same result follow if the debtor suffers an execution upon a judgment obtained by one creditor in the ordinary course of proceeding of sufficient amount to sweep away all the assets to be levied? For myself I do not see any half-way ground at which the court can stop and say this amounts to an assignment and this does not. As I think the whole ground of the ruling in this case must and does rest on the fact that the debtor has voluntarily transferred all his assets to secure a part of his debts, not by any instrument which is in form or substance an assignment within the meaning of the statute, or with any intent in fact to make such an assignment, why, then, if he suffers the same thing to be brought about in any other way which he might prevent by making a voluntary assignment, should not that also be considered an assignment?

I am unable to appreciate the force of the argument in favor of holding the transaction between the debtor and a part of his creditors, as disclosed in this record, an assignment, and think the judgment of the county court ought to be affirmed.

*By the Court.*— The judgment of the county court is reversed, and the cause is remanded for further proceedings according to law.