Maxwell and others vs. Simonton.

---

MAXWELL and others, Appellants, vs. SIMONTON, Garnishee, Respondent.

*February 26 — March 22, 1892.*

*Voluntary assignment: Chattel mortgage in trust.*

A chattel mortgage, by which an insolvent debtor sold, assigned, and set over certain property to one of his creditors in trust for the mortgagee and ten other creditors, and conditioned for the payment to the mortgagee of notes given to the several creditors named, is *held* to be a voluntary assignment for the benefit of creditors within the meaning of sec. 1694, R. S., and void as to creditors because not executed in the manner prescribed in that section, although it did not cover all the property of the debtor which was subject to seizure and sale on execution.

APPEAL from the Circuit Court for *St. Croix* County. The principal defendant, Hicks, was a merchant doing business at New Richmond. On December 22, 1890, he executed and delivered to the plaintiffs, in their firm name of *S. A. Maxwell & Co.*, a promissory note for $1,082.93, payable February 15, 1891, with a warrant of attorney thereto attached, authorizing the entry of judgment thereon. On December 26, 1890, the said Hicks and wife executed to the garnishee defendant, *Simonton*, a chattel mortgage in the usual form, reciting a consideration of one dollar, wherein and whereby he sold, assigned, and set over unto said *Simonton*, "*in trust for the parties*" thereinafter named, all his stock of goods of every name, nature, and description then contained in his store building occupied by him, consisting chiefly of books, crockery, glassware, notions, wall-

paper, blank-books, stationery, school-books, school supplies, plush goods, confectionery, toys, and cigars, together with all the store fixtures and furniture therein, conditioned to pay unto said *Simonton* thirteen promissory notes given to eleven different parties, aggregating in amount the sum of $1,795.35, besides the interest, as follows: To the Bank of New Richmond, one note, $200; to Mrs. H. Crawford, three notes aggregating $350; to said *Simonton*, one note, $260; to M. S. Bell, one note, $150; to J. Nutter, one note, $100; to the McNallys, one note, $50; to Gorham, one note, $22.50; to Williams, one note, $28.23; to Hannah M. Crawford, one note, $35; to Epley, one note, $64.62; to Annie L. Denniston, one note, $535; and also to pay an attorney fee, in case of the foreclosure of such mortgage, of $50. The said mortgage was filed on the day it was given. On February 11, 1891, said *Simonton* took possession of said mortgaged goods under said mortgage.

On February 25, 1891, the plaintiffs, as owners of said note of $1,082.93, commenced an action thereon against said Hicks, and also summoned said *Simonton* as garnishee. Judgment was entered by default against Hicks, and *Simonton* answered, justifying the seizure under said chattel mortgage. The plaintiff traversed said answer of the garnishee, and upon the trial of the issue so formed the court found, in addition to the facts stated, that at the time of the execution of the mortgage all the claims secured thereby were in the hands of W. F. McNally for collection, except the claims of said *Simonton*, Hannah M. Crawford, and Annie L. Denniston, respectively, which were in the hands of said *Simonton*, acting as their agent or for himself; that said Annie L. Denniston and Hannah M. Crawford were both aunts of said *Simonton*, and the wife of said Hicks was a sister of said *Simonton;* that at the time of the execution of said mortgage Hicks was in failing circumstances; that his property, aside from exemptions, consisted of the

stock and fixtures covered by the mortgage, about $200 in accounts, and a one-half interest in some city lots, unincumbered, worth $700, and his store lot, worth $1,500 above the incumbrances thereon; that said chattel mortgage was executed by Hicks after being pressed to execute the same by McNally and *Simonton;* that the real purpose and object of McNally, *Simonton,* and Hicks was to secure the claims therein described, there being no disposition to delay, hinder, or defraud the other creditors of Hicks; that prior to such execution it was agreed between McNally and *Simonton* that the mortgage should run to *Simonton in trust for the owners of the claims secured thereby,* as a matter of convenience, and with no other object or purpose, and without any part or suggestion from Hicks as to such method of securing said claims, he merely acquiescing in the arrangement made by them. As conclusions of law the court found that *Simonton* is not liable as garnishee, and is entitled to judgment for costs, which was thereby ordered. From the judgment entered thereon accordingly the plaintiffs appeal.

For the appellants there was a brief by *Baker & Helms,* and oral argument by *E. W. Helms.*

*W. F. McNally,* for the respondent.

CASSODAY, J. A reversal is sought on the ground that the facts in this case bring it squarely within the principles affirmed by this court in *Winner v. Hoyt,* 66 Wis. 237. It is claimed on the part of the defendant, however, that this case is distinguishable from that, and that the judgment is sustainable on the authority of *Carter v. Rewey,* 62 Wis. 552, and others like it. That case in connection with *Page v. Smith,* 24 Wis. 368, wherein certain personal property was assigned and transferred to T. P. with authority to sell the same *and apply the proceeds to the payment of said T. P. and other creditors* named, was considered in *Winner v. Hoyt,*

Maxwell and others vs. Simonton.

66 Wis. 237. In speaking of that assignment and transfer, it was there said: " It was held to be void for non-conformity to the statute, notwithstanding there was evidence that the debtors had other property, but they were insolvent. That case was distinguished in *Carter v. Rewey*, 62 Wis. 555, on the grounds that in the latter case the instrument was a formal chattel mortgage, and differed in other respects. In the case of *Carter v. Rewey*, it did not appear that the mortgage covered all the property of the debtor, and it did appear that the mortgagor expected to procure assistance from a relative to go on with his business. Moreover, the transaction occurred before the statute forbidding preferences. Whether the cases of *Page v. Smith*, and *Carter v. Rewey*, are in strict harmony or not, it is certain the case of *Carter v. Rewey* should not be extended, and possibly *Page v. Smith* might properly be restricted." In *Carter v. Rewey*, the mortgage ran to *Carter*, and was in form to secure $1,000, but in fact to secure certain claims, amounting to about $500, held by Carter as attorney for collection, and also to secure such other claims against the mortgagor as might thereafter come into his hands for collection. It was conceded in that case that an attorney might take a mortgage in his own name to secure a debt due to his client, but it was contended that an attorney could not take a mortgage from an insolvent debtor to secure debts due to creditors not his clients. It was held, however, that, as to such claims as might thereafter come into the hands of the attorney, the case stood upon the same principle as a mortgage for future advances; that is to say, valid only to the extent that claims came into his hands prior to the seizure upon adverse claims of any other creditor. The written instrument in that case was a chattel mortgage, pure and simple, and was exacted by creditors through their attorney, and given reluctantly to avoid something worse.

In the absence of fraud, a chattel mortgage by way of security is expressly authorized by statute. Sec. 2314, R. S. Thus it has been held that a chattel mortgage by an insolvent debtor, of all his property not *exempt* from execution, given for no other purpose than to secure his indebtedness to his creditor, does not constitute a voluntary assignment. *Menzesheimer v. Kennedy*, 75 Wis. 411. The question recurs whether the instrument in question is anything more than a straight chattel mortgage. In other words, Does it come under the condemnation of the statute which provides that "all *voluntary* assignments or transfers whatever of any real estate, chattels real, goods or chattels, rights, credits, moneys, or effects, *for the benefit of or in trust for creditors*, shall be void as against the creditors of the person making the same, unless the assignee shall be a resident of this state" and the assignment is executed as therein required. Sec. 1694, R. S.

In *Winner v. Hoyt*, 66 Wis. 237, the transaction was such as to bring it squarely within the condemnation of this statute. Since that decision numerous cases have been before this court, in which it has been contended that the facts brought the case within that decision, but which the court has held to be distinguished from it. Quite a number of these cases are reviewed in *Cribb v. Hibbard, S., B. & Co.* 77 Wis. 208, 209. By way of quoting from standard text-writers, it was there in effect said: "Voluntary assignments for the benefit of creditors are transfers, without compulsion of law, by debtors, *of some* or all of their property, to an assignee or assignees, *in trust* to apply the same, or the proceeds thereof, to the payment of *some* or all of their debts, *and return the surplus*, if any, to the *debtor*. . . . There must be a *trust, a trustee*, creditors, and *cestui que trust*, who can compel an enforcement of the trust, in order to constitute an assignment for the benefit of or in trust for creditors." "A voluntary assignment

Maxwell and others vs. Simonton.

for the benefit of creditors implies a trust, and contemplates the intervention of a trustee. Assignments directly to creditors, and not upon trust, are not voluntary assignments for the benefit of creditors. . . . Unless a trust is thereby created *by the assignor in favor of creditors,* such conveyances are not within the class of instruments known as assignments for creditors. It is not essential, however, that a trustee should be named *as such* in the instruments." These propositions are fully sanctioned in the case last cited. Thus, in a recent case in Oregon it is held that " when a creditor undertakes, under an agreement with the assignor, to sell the property, and apply the proceeds to the payment of his own and other debts of his assignor, and refund the surplus, he becomes a trustee, and the transaction amounts to a voluntary assignment." *Stout v. Watson,* 19 Oreg. 251.

It seems to us the instrument in the case at bar, although mostly in the form of a chattel mortgage, yet by reason of certain provisions therein contained is, in substance and effect, an assignment for the benefit of and in trust for creditors, within the principles stated and the statute cited. As indicated in the foregoing statement, by the mortgage Hicks sold, assigned, and set over unto the said *Simonton,* "*in trust for the parties*" therein named, the property described, conditioned that the same should be void in case Hicks paid the thirteen notes to the eleven different parties therein named, respectively; but in case of his default or failure to perform any of the other conditions of the mortgage, or if at any time the mortgagee deemed himself insecure, then *Simonton* or his assigns or authorized agent was thereby empowered to take, hold, sell, and dispose of such property, with or without notice, and on such terms as he might see fit, retaining such amount as would pay said several notes and the interest thereon, and $50 attorney's fee, and such other expenses as might be incurred, and return the surplus, if any, to said Hicks and wife, their

heirs and assigns. Manifestly *Simonton* was thus authorized to take, hold, and dispose of the property for the benefit of himself, and in trust for the other ten parties therein named, within the rule thus sanctioned by the authorities cited. The trust thus imposed in *Simonton* by the instrument gave to it all of the characteristics of an assignment at common law; that is to say, it embodied "a trust, a trustee, creditors, and *cestui que trust*." It was given voluntarily for the benefit of creditors, with an express trust imposed in a trustee named for their benefit, and hence fully answers the definition given by Mr. Burrill and above quoted. True, it did not cover all the property of the debtor; but that was not required by the authorities cited. In *Page v. Smith*, 24 Wis. 368, there was evidence that the debtors had other property, but that was deemed immaterial, since the debtors were insolvent and the transfer was in trust. The statute quoted makes no distinction between transfers which cover only a part and those covering the whole of the debtor's property. The language is, "*all* voluntary assignments or transfers whatever of *any* of" the debtor's property, "for the benefit of or in trust for creditors, shall be void as against creditors," except when made as prescribed.

For the reasons given, we must hold the instrument in question void under the statute cited.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for further proceedings in accordance with this opinion.