## WACHTER vs. FAMACHON.
## ZEIPRECHT vs. FAMACHON.

*December 19, 1884 — January 13, 1885.*

ATTACHMENT: VOLUNTARY ASSIGNMENT. *(1) Fraudulently incurring obligation: Renewal of notes. (2) Conveyance before assignment: Evidence of fraudulent intent.*

1. A debtor who, by fraudulently representing himself to be solvent, obtains a surrender of his overdue notes and induces his creditor to accept new notes for the same amounts payable at a future day, fraudulently incurs an *obligation,* within the meaning of subd. 4, sec. 2731, R. S., and renders his property subject to attachment in an action on such notes.
2. The mere fact that a debtor has made a conveyance or mortgage with intent to prefer a particular creditor, within sixty days prior to a general assignment for the benefit of all his creditors, is not in itself, under sec. 2, ch. 349, Laws of 1883, evidence of an intent to defraud creditors.

APPEALS from the Circuit Court for *Crawford* County.

The facts sufficiently appear from the opinion. The plaintiffs appealed from orders dissolving their attachments.

For the appellants there were briefs by *Thomas & Fuller,* and oral argument by *Mr. Thomas.*

For the respondent there were briefs by *Wilson & Provis* and *W. H. Evans,* and oral argument by *Mr. Provis* and *Mr. Evans.* They contended, *inter alia,* that the new notes took the place of the old ones, leaving the indebtedness unaffected by the transaction. *Williams v. Starr,* 5 Wis. 534; *Tuthill v. Davis,* 20 Johns. 285. The word "obligation"

found in the statute is not used therein in the sense of sign-ing a new note or other new evidence of a pre-existing debt, but rather as a distinctive feature of the word "debt" as used therein. The defendant was not shown to be in any worse situation financially at the time the actions were brought in 1884 than when the renewal notes were given, and as the plaintiffs would have been in no better situation to enforce collection of their debts when the renewal notes were given than when the actions were finally brought, they suffered no injury from the defendant's misrepresentations. Those misrepresentations were, therefore, not fraudulent in a legal sense. *Ableman v. Roth*, 12 Wis. 81; *Castleman v. Griffin*, 13 id. 535; *Barber v. Kilbourn*, 16 id. 485.

ORTON, J. These two cases, resting substantially upon the same facts, were heard together. The trials were upon the traverse of the affidavits in attachment which charged the defendant with having fraudulently contracted the debt or incurred the obligation, and with having assigned, etc., or being about to assign, etc., his property, or some part thereof, with intent to defraud his creditors. The circuit court found for the defendant upon both issues, and dismissed the attach-ments. The cases come before this court upon questions of fact mainly.

From a careful examination and consideration of the evi-dence we are satisfied that as to the first cause assigned in the affidavits, the court erred, and ought to have found that the obligations were fraudulently incurred, and that as to the second cause the court found correctly. Either of these causes would sustain the attachments.

On the first ground, and as to the first above case, the evidence was substantially as follows: The defendant had been long engaged in the business of merchandising, milling, etc., and had apparently been doing a very large and success-ful business, and had enjoyed the general confidence and

large credits, and was in possession of a large amount of property. He had given the plaintiff his note for $1,000, which, on January 3, 1882, was past due, and the plaintiff wanted his money. The defendant desired to procure an extension of the time of payment, and to have the old note canceled, and to give a new note for the amount, to be payable one year from date. The plaintiff demanded a statement of his circumstances before entering into this new arrangement, and the defendant represented that he was perfectly good, and that his property was clear from incumbrance, with no mortgage or anything upon it; that he did not owe a great deal; and that the plaintiff's debt was as large as any he had. The defendant admits that at that time he owed a debt to one Tilmont of from $17,000 to $20,000; that he owed others from $3,000 to $5,000; and that he owed in all the sum of from $60,000 to $70,000; and that his property was not worth to exceed $40,000. It appears also that he was grossly insolvent and very greatly embarrassed in his business, and pressed for payment of other debts; and that he had given a mortgage upon his real estate a long time before to one Ray for $3,000, which was still unpaid and unsatisfied, and that in 1876 he owed one Joseph Tilmont about $20,000, and he and his wife executed a deed in blank upon his mill property and interest in Dousman's block as security for the same, and kept it in his possession, but evidently designed to be filled up and delivered when it might be necessary to have the same secure said debt in preference to other debts; and that soon after Joseph Tilmont died, in 1879, he filled out said deed to his son, Alexander Tilmont, and delivered it to him to secure the same debt; and on the day of the attachment said deed was acknowledged and recorded. The plaintiff was wholly ignorant of these facts, and supposed from the statement of the defendant that he was in prosperous circumstances and solvent, and that he was not in debt to a very large amount; and, relying upon

said statements, he consented to cancel the old note and take a new one for the same amount, payable one year from that date. 'The plaintiff testified that he would not have taken such new note, and so extended the time, had he not relied upon said statements, in ignorance of the facts. The note so given is the one in suit. The attachment was served upon the 12th day of March, 1884; and on the 17th day of the same month the defendant made an assignment for the benefit of his creditors, and then was indebted $73,000, and his property was over-valued at $43,000. It is needless to comment upon facts so conclusively establishing the fraud of the defendant in procuring such extension of credit, and in inducing the plaintiff to postpone his debt and take said note.

The only difference between this case and the other one is that the defendant was indebted to the plaintiff on several notes, aggregating over $5,000, April 4, 1879, then due. They were canceled, and the new notes in suit given, payable at various times thereafter, on the statements of the defendant, in addition to the statements above set forth concerning his property and incumbrances thereon, that he owed only $18,000 or $20,000, and that his property was unincumbered. The defendant was then indebted, by his own admission in evidence, $62,000, and the Ray mortgage was recorded March 1, 1879. The evidence of fraud is very nearly as strong in this case, and the circumstances under which the new notes, with extended credit, were given are nearly the same, as in the first case.

It was intimated on the argument that the learned judge before whom this case was tried did not doubt that the new credits had been obtained, and that the plaintiffs had been induced to take the new notes, by fraud, but held that by this transaction no new obligation had been incurred or any debt contracted. It is quite clear that the giving of the new note was not contracting a new debt. The debt was the

$1,000 in the first case and the $5,000 in the other, the same in the new as in the old notes. But it is equally clear that a new contract can be made concerning the same debt. The new notes were new contracts of different terms from the old contracts. By the first contracts the debt was due, and by the new ones the debt is not due, and will not be for a considerable time to come, or until the time stipulated in the new contracts. Was the defendant bound by these new contracts or new notes? If so, he was *obligated;* for that means strictly, and in common parlance, *to be bound.* The obligation of the old notes was that they should be paid immediately or at once, for they were due. The obligation of the new ones is that they shall be paid in one year, or the longer time stipulated. Both parties were bound by the new notes. The plaintiffs could not enforce their payment until the time stipulated, and the defendant was under an obligation to pay them at maturity, and not before.

The term "obligation" has been treated *in extenso* by many learned moral and civil writers, and has been somewhat mystified by classification, and its correct use in connection with the various and numerous subjects in which it has been applied, has not always been very clearly established; but the term, when used in relation to contracts, is neither mystical nor doubtful, and its meaning is well understood by lawyers. *Obligatio ex contractu,* and *obligatio est juris vinculum,* are terms of the Roman law with well-defined meaning. *Obligo — ligo* is to *bind.* Obligation implies a duty, and a duty that may be enforced by law, to perform the contract according to its terms. The constitution of the United States uses the term in this sense when it prohibits the enactment of laws impairing the obligation of contracts. In *Sturges v. Crowninshield,* 4 Wheat. 197, Chief Justice MARSHALL says: "It would seem difficult to substitute words which are more intelligible, or less liable to misconstruction, than those which are to be explained. A

contract is an agreement in which a party undertakes to do or not to do a particular thing. The law *binds* him to perform his undertaking, and this is, of course, the *obligation* of his contract." In the celebrated case of *Ogden v. Saunders*, 12 Wheat. 213, in which Mr. Webster, Mr. Clay, and other very able lawyers participated in the argument, and several of the judges wrote elaborate opinions, the above definition or meaning of the constitutional clause, as established by Chief Justice MARSHALL, was reaffirmed. The terse definition or exposition by Mr. Justice TRIMBLE, that "the natural obligation of contracts is co-extensive with the duty of performance," is, perhaps, the more complete.

The obligation in this case is, not to pay the debt merely, but to pay the debt according to the terms of the contract made concerning the debt. Suppose the legislature should pass a law making all debts due at once. It might be said that such a law did not affect the debt in any sense, but rather establishes the debt and makes it absolute and inviolable, and therefore does not impair the obligation of contracts, because the obligation only concerns the debt. But such a law would impair the obligation of every contract in the land for the payment of money not due, because it would change or abolish the terms and conditions of such contracts. The *time* of payment is of the essence, and in . part creates the obligation of such contracts. The obligation is as broad as the contract and its terms.

To apply these obvious principles to the giving of these new notes, the terms of the old contracts as to the time of payment were changed by them, and the obligation of the new contracts bound the parties to the performance according to such terms. The defendant, by giving the new notes, incurred new obligations commensurate with the changed terms of the old ones. By such new notes, the defendant gained an advantage by an increased term of credit, and the plaintiffs·lost the advantage. of an immediate recovery

of their money. The suits are brought upon these notes now due, and not on the old notes, which were canceled. The obligation of these notes was incurred by the defendant by fraud. This gave the plaintiffs a right to their attachments.

The learned counsel of the appellants strenuously insisted on the argument that the circuit court erred also in not finding that the defendant had made conveyances, etc., with intent to defraud his creditors, and relied upon sec. 2, ch. 349, Laws of 1883, which makes every sale, mortgage, etc., made by an insolvent debtor of his property within sixty days prior to the making of an assignment for the benefit of his creditors, and in contemplation thereof, void and of no effect, as showing that the deed to Tilmont, which was made effectual by acknowledgment, registration, and delivery the day before the attachment and within sixty days prior to the assignment, was made with intent to defraud creditors. There is nothing difficult in the meaning and proper construction of that act. Before it was passed creditors might be preferred, even in assignments. This is prohibited by the first section, and renders the assignment void. The act does not pretend to prohibit a debtor from preferring one creditor to another in the payment or security of his claim generally, but only such preference by assignment, and then makes void any other preferences and conveyances, etc., made within sixty days prior to an assignment. Unless an assignment is made, all preferences are as lawful as they were before the act was passed, and all preferences not within the act are now as lawful as they always were. This shows that preferences are not made acts of fraud or of bad faith, or evidence of an intent to defraud, in themselves. Those preferences which are prohibited by the act are not tainted by it so as to make them intrinsically dishonest or morally wrong, and, certainly, all other preferences remain as they were, right and proper. If any preference or con-

veyance, etc., within or without the act, is made with intent to defraud creditors, it is void; not, however, by virtue of this act, but by virtue of the general statute against fraudulent conveyances. Sec. 2320, R. S. Even those preferences within the act are void only in contemplation of the assignment. Such conveyances are void and of no effect, and the assignee is given the power to institute any action or proceeding to set them aside and subject the property so conveyed to the assignment and the payment of the creditors under the assignment, in analogy to our former general bankrupt laws of the United States. It follows that the fact that the defendant made a conveyance or mortgage within the sixty days prior to his assignment is. no evidence in itself of any intent to defraud creditors.

*By the Court.*— The orders of the circuit court are reversed, and the causes remanded for further proceedings according to law.

