SWIFT, Respondent, vs. THE STATE LUMBER COMPANY and others, Appellants.

*March 28 — April 17, 1888.*

*Equity: Debtor and creditor: Deed absolute in form: Mortgage: Assignment: Redemption: Accounting: Parties: Trusts and trustees.*

1. The legal title to plaintiff's undivided interest in certain lands was held by one J., who had purchased jointly with him, as security for moneys advanced for plaintiff on such purchase. J. conveyed plaintiff's interest and a part of his own to B. and L., who loaned to plaintiff the money wherewith to repay the advance made by J., and agreed to convey to the plaintiff the title to his interest in the lands when they should receive from him, or from the sale of timber cut from the land, the amount of the loan, with interest, expenses, etc. B. conveyed his interest to persons having full knowledge of the equities, and afterwards, by conveyances from J., L., and the grantees of B., the entire legal title became vested in the defendant corporation, which, through its officers, had like knowledge of the equities. In an action to have the deed from J. to B. and L. declared a mortgage, for an accounting for timber cut and sold, etc., and to compel a conveyance to plaintiff of his interest in the land, *held:*

    (1) The relation between the plaintiff and B. and L. was, in effect, that of mortgagor and mortgagees, and the subsequent conveyances must in equity be regarded as assignments of any balance

Swift vs. The State Lumber Co. and others.

remaining unpaid on the mortgage at the times they were respectively made.

(2) Grantees of B. through whom the title passed to the defendant company, and the personal representatives of B., are not necessary parties, and there was no error in refusing to require them to be brought in.

2. One who held the legal title to land merely as security for a debt due him, conveyed the same to his son by deed absolute in form. It was claimed that the conveyance was intended as a trust for the benefit of the grantee and his brothers. *Held*, that the grantee was at least a trustee of an express trust, within the meaning of sec. 2607, R. S., and his brothers need not be joined as defendants in an action by the debtor to redeem the land as from a mortgage.

APPEAL from the Circuit Court for *Chippewa* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This action was commenced against the *State Lumber Company, Edward Bradley* and *Allen P. Lovejoy*, about May 5, 1886. It appears from the complaint that prior to October 14, 1871, the plaintiff, *Swift*, and one Jenkins jointly purchased the 17,000 acres of land described; that, in doing so, Jenkins, at the request of *Swift*, advanced and paid thereon for him $10,000, upon the express agreement that the equal undivided three-fourths of said lands should belong to Jenkins and the other equal undivided one-fourth should belong to *Swift*, that Jenkins should take the legal title to the whole of said lands and hold three fourths thereof as his own and the other one-fourth thereof as security for the money so advanced and loaned by him to *Swift;* that on the day and year named he so held the legal title to the whole of said lands; that October 14, 1871, Jenkins, from his own share, bargained and sold to D. W. Bradley and *Lovejoy* the undivided one-half of all said lands, and conveyed the same by warranty deeds to them, together with the undivided one-fourth which in equity belonged to *Swift;* that by such deeds D. W. Bradley took the undivided twelve-twentieths of all said lands, and said *Lovejoy*

the undivided three-twentieths thereof; that this was done in pursuance of an agreement between *Swift*, D. W. Bradley, and *Lovejoy*, whereby they were to and did advance to *Swift*, as a loan, $10,000, with which he paid his indebtedness of that amount to Jenkins, and for the security of the repayment of which, with interest, they were to hold the title to *Swift's* said one-fourth; that upon such conveyance D. W. Bradley and *Lovejoy* gave back an agreement, dated October 14, 1871, reciting the facts stated, and wherein they agreed, in effect, to reconvey to *Swift*, his heirs or assigns, his one-fourth of the whole, whenever requested by him, his heirs or assigns, at any time after they should receive from *Swift*, or the sale of said lands, or from the proceeds of timber cut from the same, the said $10,000, with annual interest thereon at ten per cent. from May 1, 1872, together with one third part of all necessary expenses or expenditures they might incur in managing and protecting the three-fourths of the whole land to which they thus received title, provided *Swift* or Jenkins should pay all taxes on said lands, including the taxes of 1871, and also all interest as it had or should become due on three notes signed by Jenkins, and payable to Palms, as per agreement made by Jenkins and *Swift;* and *Swift* was annually to pay all taxes on his share of said lands so conditionally conveyed, and in the event of his failure in any year, and they paid the same, then *Swift* was to refund to them such advances, with annual interest at ten per cent., before they should be required to so reconvey; that it was therein agreed, in effect, that D. W. Bradley and *Lovejoy* should have the right to sell, or permit to be cut and removed from said lands, at any and all times, timber, until they were fully paid as aforesaid and saved harmless from such taxes and interest, at such prices as they might deem expedient and might obtain for their own interest in the same timber; and the net proceeds of timber so received should be applied as such payments, but they were not to

sell any of *Swift's* interest in said lands, without his written consent, during the six years next after the date of said agreement; that *Swift* was to look after the land and timber thereon, and, when requested by them, to sell, or permit on the same, or make contracts for, the cutting and removing of the timber, etc., and supervising the same; that July 13, 1872, D. W. Bradley sold and conveyed the undivided four-twentieths of said lands to A. P. & D. Kelley, of Chicago, who took the same with actual knowledge of the plaintiff's right, title, interest, and equities in the land; that April 15, 1875, D. W. Bradley, without any consideration, made a voluntary conveyance, by quitclaim deed, of his remaining eight-twentieths of the land to his son, *Edward Bradley*, who took the same with notice of said agreements and of the plaintiff's right, title, interest, and equities in the lands; that in 1876 the said D. W. Bradley died intestate at Muskegon, Mich., where he at the time resided, and that no administrator of his estate has ever been appointed in Wisconsin; that said company was incorporated and organized October 6, 1882; that in October and November, 1882, the said Jenkins, *Edward Bradley*, *Lovejoy*, and the Kelleys conveyed, by quitclaim deeds, all of said lands (except fourteen forties in Price county from which the timber had been cut, and the lands abandoned) to the defendant the *State Lumber Company;* that at the times of taking the same, and prior thereto, the said lumber company and its officers and stockholders had full knowledge and notice of the said right, title, interest, and equities of the plaintiff in said lands; that the plaintiff paid all said taxes and interest up to and including 1877, and the highway taxes of 1878, and that the defendants, or their predecessors in interest, have paid them since; that said *Edward Bradley* has a full account of all matters mentioned, and of all taxes and interest paid, and of all moneys received for timber cut or removed from the lands and the expenses thereof, and of all

dealings with the lands; that the defendants have cut and removed from the lands large amounts of timber, and re_ceived large amounts of money on account thereof; that the net amount so received by the defendants was more than enough to pay off and extinguish said indebtedness from the plaintiff to D. W. Bradley and *Lovejoy*, and the interest thereon and taxes; that the plaintiff has frequently demanded of the defendants an accounting, but that they have and still do refuse to account.   The complaint prayed judgment that the deeds from Jenkins be declared a mortgage as to the plaintiff's share, and the plaintiff the owner thereof subject to the mortgage; and for an accounting, paying over, and reconveyance.

The answer of the defendants admitted some things, restated others, and denied any knowledge or information sufficient to form a belief as to others, and then, in effect, denied the payment or satisfaction of the plaintiff's indebtedness, or his right to any accounting or proceeds of timber or reconveyance.   The answer also alleged, in effect, that D. W. Bradley and *Lovejoy* took said one-fourth interest absolutely, and subject only to the plaintiff's right to repurchase the same upon terms stated, which had never been done; that the plaintiff had, from time to time, with consent of those holding the title, procured large portions of the timber to be cut from the lands, and had or received the benefit of his share of the proceeds thereof; that in 1877 the plaintiff had accountings with the Kelleys and also *Edward Bradley* and *Lovejoy;* that in 1880, and since, large amounts of timber had been cut and sold from the lands with the knowledge of the plaintiff, and the results and the distribution of the proceeds thereof, and that there was a large balance still due from the plaintiff.

October 26, 1887, the plaintiff was ordered to show cause why the defendants should not be allowed to amend their answer, and why said A. P. & David Kelley, William H.

Bradley, and James W. Bradley, named in such proposed amended answer and affidavits, should not be made parties defendant, and the summons and complaint be amended accordingly. The proposed amendment to the answer alleged, among other things, in effect, that, at the time of the conveyance to the Kelleys, D. W. Bradley made a contract with them whereby they took such lands subject to the contract with the plaintiff, and agreed to share the burdens as well as the benefits thereof; that the Kelleys still resided in Chicago, that they participated in cutting, removing, and selling the timber, and in the moneys received therefor, and were interested in the subject matter of the action; that said *Edward Bradley* took said deed from his father in trust for the equal benefit of himself and his two brothers,— the said William H. and James W., who reside in Milwaukee; that D. W. Bradley left a will which had been duly proved and admitted to probate in Michigan. The plaintiff responded to the order to show cause, by affidavit; and, upon hearing the motion, the same was overruled and denied, and the order to show cause discharged, with costs against the defendants. From that order the defendants appeal.

For the appellants there were briefs by *Stark & Sutherland*, and oral argument by *Mr. Joshua Stark*. They contended, *inter alia*, that all who, as assignees of D. W. Bradley, or purchasers from him, were at any time in possession and in receipt of the rents and profits of the one-fourth interest in lands to which the plaintiff had an equitable claim, and participated in the sale of that interest and shared in the proceeds of the same, are interested in the accounting and should be made parties. *Armstrong v. Pratt*, 2 Wis. 306; Story's Eq. Pl. secs. 72, 76a, 138, 160, 192; *Posten v. Miller*, 60 Wis. 494, 499; *Eldredge v. Putnam*, 46 id. 205; *Burhop v. Milwaukee*, 18 id. 431; *Burhop v. Roosevelt*, 20 id. 338.

For the respondent there was a brief by *Levi M. Vilas*,

attorney, and *M. Griffin*, of counsel, and oral argument by *Mr. Vilas.*

CASSODAY, J.    Upon the facts stated, and numerous decisions of this court, we must hold that the plaintiff was, in legal effect, the owner of the undivided one-fourth of all the lands in question, October 14, 1871, subject to the payment of the $10,000 mentioned; and that when D. W. Bradley and *Lovejoy* advanced the amount of money named and received the conveyances from Jenkins, they took and received the title to such undivided one-fourth as security for the money so advanced, and such interest, taxes, etc.; and hence, under the agreement mentioned, the relation between the plaintiff and them was, in legal effect, that of mortgagor and mortgagees.    *Starks v. Redfield*, 52 Wis. 352, 353; *Hoile v. Bailey*, 58 Wis. 448; *Schriber v. Le Clair*, 66 Wis. 579; and cases cited in these references.    By such conveyances D. W. Bradley got the legal title to twelve twentieths of the lands, and *Lovejoy* three twentieths, while the other five twentieths remained in Jenkins.    July 13, 1872, D. W. Bradley sold and conveyed to the Kelleys four twentieths of the lands, and September 15, 1875, he made a voluntary conveyance of his other eight twentieths to his son *Edward.* November 10, 1882, Jenkins, *Edward Bradley*, the Kelleys, and *Lovejoy* conveyed the whole of the lands, except fourteen forties apparently worthless, to the defendant company.    These several conveyances must each in equity be regarded as an assignment of a fractional part, or the whole, of any balance that may have remained unpaid on the mortgage at the times they were respectively made.    Whether or not there were any such unpaid balances can only be determined by an accounting and trial upon the merits. This action, therefore, is essentially a bill for an accounting by these defendants, and for a redemption from the mortgage, and a reconveyance from the defendant company.

The principal contention is that there is a defect of parties defendant. It is claimed that, as a matter of fact, *Edward Bradley* took such title from his father in trust for himself and his two brothers, William H. Bradley and James W. Bradley, who should be made parties defendant. Since the deed to *Edward* was absolute in form, it would seem that, even upon the showing of the defendants, he was at least a trustee of an express trust, within the meaning of the statutes. Sec. 2607, R. S. *Winner v. Hoyt*, 66 Wis. 234, 235; *State v. Wettstein*, 64 Wis. 243; *Platteville v. Hooper*, 63 Wis. 383; *Poor v. Guilford*, 61 Am. Dec. 749; *Johnson v. Catlin*, 62 Am. Dec. 622. This being so, he could maintain an action in relation to the land without joining his brothers. *Ibid.* Having the right to thus sue alone, we perceive no reason why he may not with equal propriety defend the title thus acquired, without joining his brothers as defendants. Certainly, the conveyance to him carried with it all the title his father had in the lands at the time it was made, and that same title has since been conveyed to the lumber company. Since neither William H. nor James W. has any legal title or interest in the land, and no attempt is made to charge them personally, they cannot be regarded as necessary parties to this action.

The same is true respecting the personal representatives of the D. W. Bradley estate, and also both of the Kelleys. Certainly it is unnecessary for the assignor of the mortgage to be made a party in an action to redeem from the mortgage. That is practically what is sought to be required here. Neither the Kelleys, nor any of the other absent parties mentioned, have submitted themselves to the jurisdiction of the court and sought to be made parties. The burden is upon the plaintiff to show that the mortgage has been paid, and hence that he is entitled to a reconveyance. Such payment is claimed by reason of his share of the net proceeds of timber removed and sales of timber and land.

If the plaintiff's share of such net proceeds were at any time sufficient to pay off and satisfy such indebtedness, interest, taxes, etc., in accordance with the contract, then the mortgage thereby became extinguished, and the plaintiff thereby became entitled to a reconveyance of his share of the land; and if, thereafter, any timber was removed from the land, or any timber or land sold, then the plaintiff would be entitled to recover his share of such excess from the party removing or selling, or authorizing or causing such removal or sale. But, even in that event, these defendants, in the absence of any liability created by contract, could only be chargeable with so much of such share of such excess as should arise from such removal or sales by themselves. While the plaintiff, therefore, may possibly be interested in holding some one liable for his share of such excess who is not a party to this action, yet it is not perceived that the defendants are interested in, or are prejudiced by, the absence of such party. Even if the Kelleys or some other absent party is liable on contract to some of the defendants for timber removed or sold, yet it does not appear that the plaintiff has become bound by any such contract, and if not, he certainly cannot be coerced into making it available in this action. The plaintiff is now only proceeding against these defendants, and for an accounting and reconveyance. The answer filed seems to be sufficient to protect the defendants and to raise all equities in which any of them are concerned. If it should appear otherwise upon the hearing, the trial court would undoubtedly allow such amendments as might appear to be just. We are unable to say that there was any abuse of discretion in disallowing the proposed amendment.

*By the Court.*— The order of the circuit court is affirmed.