### FREUND and others *v.* YAEGERMAN and others.[1]

*(Circuit Court, E. D. Missouri.* February 23 and March 2, 1884.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—MORTGAGE OF ENTIRE ASSETS BY INSOLVENT DEBTOR—REV. ST. MO. § 1354.
     Where an insolvent debtor mortgaged all of his property not exempt from execution, to secure the payment of an antecedent debt due one of his creditors, and thereafter, on the same day, made a general assignment for the benefit of all his creditors, *held*, (1) that under the Missouri statutes the mortgage is void; (2) that the mortgagee is entitled to share equally with other creditors under the general assignment; (3) that the assignee of the state court should close out the estate.[2]

2. SAME—JURISDICTION—FUND IN POSSESSION OF STATE TRIBUNAL.
     *Semble,* that, where a fund is in the possession of a state tribunal, this court will not interfere with it.

In Equity. Creditors' bill.

When the mortgage in question herein was executed by Mr. Yaegerman, he was insolvent. It covered all of his property except a small amount exempt from execution. The first of the following opinions was delivered February 23, 1886.

*A. Binswanger* and *E. Smith,* for complainants.

*Robert W. Goode,* for Yaegerman.

TREAT, J., *(orally.)* The facts, as developed in this case, in a few words, are these: Mr. Yaegerman, having a business establishment, executed a mortgage for an antecedent debt to Miss Betsy Holts, which debt it is alleged had existed for some two or three years. That mortgage, from its terms, was inoperative; in that there were provisions which the law does not tolerate. It occurred to the attorneys of the parties, very properly, that the provisions of that mortgage might invalidate it; therefore it was thought a general assignment should be made under the state law. It was made. The assignee under the state law took possession. The bill was filed here for injunction. By agreement among the parties the assignee proceeded to sell said property. It was sold. The proceeds are in his hands.

---

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

[2] Respecting assignment for the benefit of creditors, see Wooldridge v. Irving, 23 Fed. Rep. 676, and note, 682–690; Webb v. Armistead, 26 Fed. Rep. 70, and note, 72–73.

True, he is made, by amendment, a party to the proceedings here; being primarily an officer of the state court, and subject to its rules. I apprehend that there is no conflict likely to arise in the matter, because the difficulty is with regard to this mortgage,—whether the funds that came through his hands shall be paid first to this mortgagee, or that the matter shall be treated as a general assignment. Now, under the repeated decisions made by this court, a transaction of this kind is nothing but a general assignment. Taking the two papers together, instead of separating them, which might be done, the mortgage and the assignment, simultaneous, should be treated as a general assignment for the benefit *pro rata* of the creditors. The result is that this court will decree that the said mortgage be declared void, and the mortgagee therein be remitted, as a general creditor, to share *pro rata* in the proceeds of the property now in the hands of the said assignee; the costs in this court to be charged against the fund in the hands of the assignee.

————

The following opinion was delivered March 2, 1886:

TREAT, J., (*orally.*) In this case of *Freund* v. *Yaegerman*, the court, some days ago, passed a decree, which was withheld, at the request of the parties, for further consideration. I have gone over all the authorities presented on either side, and a great many other authorities not presented in the briefs. The early Missouri cases were determined under an entirely different statute, where the right to prefer in an assignment was a statutory right. In the various courts of the country decisions have been made, under the respective statutes of those states, which throw very little light upon the question under consideration. The nearest cases, perhaps, other than those here, are the New Hampshire and Tennessee cases cited by Mr. Mills in a case decided a few days ago. The question involved in the matter now before the court has undergone adjudication in the federal courts, and never yet been decided expressly by the supreme court of the state. This court would follow the decision of the supreme court of the state if any had been made on the propositions involved. There is one case cited by the counsel for the defendants, by the supreme court, and a recent case by the court of appeals at Kansas City, which seem to come very near to the views he seeks to uphold. Neither of them reaches the point involved here. When the question was first presented in the United States circuit court for the Western district of Missouri, Judge KREKEL, with the concurrence of Judge McCRARY, laid down what he considered the true interpretation of the statute concerning the facts then involved. Subsequently a case arose here in which, sitting alone, I considered it my duty to follow the rulings of the circuit court judge. Subsequently Brother BREWER came on the bench. He did not like

those rulings, and so expressed himself, giving his reasons therefor, all of which have appeared in the Reports. Consequently the matter rested in that condition until Mr. Justice MILLER came on the circuit. The matter then was considered in its entirety, (under the views expressed by Brother BREWER,) whether he would not overrule those decisions of Judges KREKEL and McCRARY. At Justice MILLER's instance, I sat with him in the hearing. The conclusion reached was substantially this: that under the statute of the state of Missouri concerning voluntary assignments, when property was disposed of in entirety or substantially,—that is, the entire property of the debtor, he being insolvent,—it fell within the provisions of the assignment law. The very purpose of the law was that no preference should be given. No matter by what name the end is sought to be effected, it is in violation of that statute. You may call it a mortgage, or you may make a confession of judgment, or use any other contrivance, by whatever name known, if the purpose is to dispose of an insolvent debtor's estate, whereby a preference is to be effected, it is in violation of the statute. That was the opinion of Brother MILLER, with which I fully concurred.

The case before the court falls within that decision. Without discussing the question as to whether the mortgage in this case, executed the same day as the general assignment, was valid on its face or invalid, (and it appears it was invalid,) and admitting—and there is nothing here to show to the contrary—that the mortgagee was a creditor in perfect good faith, the proposition is to be determined whether a mortgage thus executed, conveying the entirety of the insolvent's estate, followed simultaneously, or a few minutes thereafter, by a general assignment, can operate to defeat that statute of Missouri which says that all creditors shall share *pro rata.* I have examined all the authorities named, together with additional authorities cited by the counsel for the defendants, and I still think that Justice MILLER's ruling, in which I fully concur, is the true interpretation of the Missouri statute.

*Mr. Goode.* The only thing left out in that ruling is that your honor will permit a motion for rehearing, which I would like to argue before Judge BREWER, with your honor, for the reason, as I understand, that you, as well as Judge BREWER, think that Judge Mc-CRARY, in laying down that doctrine, was wrong.

*Treat, J.* No, you mistake; I think he was right.

*Mr. Goode.* Judge BREWER thinks he was wrong, and has so expressed himself. Now, Judge BREWER, in his last decision, stated that he wished the United States supreme court, or, rather, our state supreme court, would authoritatively construe that statute. That wish has not been complied with yet. But in the case cited from the Kansas City court of appeals there was an authoritative construction of that statute satisfactory to myself, and I must concede, while

not binding on yourself or Judge BREWER, still, if Judge BREWER would consider that binding on him to that extent, as to the construction of the Missouri statute, your honor would defer to that ruling of Judge BREWER, and I would therefore ask as a favor—I can only consider it such—that I may be permitted to argue the motion before Judge BREWER.

*Treat, J.* It was my thought to suggest to the counsel that this hearing should be had before Judge BREWER, but you forced me to hear it, and I have had to decide it in the light of what must be considered the authoritative ruling in this circuit until something happens, which has not happened, in the way of a decision of the supreme court of the state, or Brother MILLER overrules himself. It does not become me to overrule Justice MILLER.

*Mr. Goode.* I wish, as Judge BREWER said in my hearing once, and as he has also said in the *Nordmeyer Case,* 25 Fed. Rep. 71, (reported and read by Mr. Smith,) that he wished the state supreme court would authoritively construe the statute; indicating, by his expression and wish, his belief that they would construe it differently from Justice MILLER, and satisfy him that he was right in differing with that opinion. I wish, therefore, to show him the Kansas City court of appeal's decision, which has, for the first time in the history of any court in this state, construed section 354, and ask him if that is not sufficient authority, I have that confidence in Judge BREWER that he will consider it sufficient, and as he will be here within 15 days, there will be no harm in granting me that privilege.

*Treat, J.* I have no objection to your motion. You can file it under the rules. I will not hear the motion until he comes. There will be no great delay. There was a difficulty when this case was first presented, which suggested itself to the mind of the court, viz., that here was an officer of the state court, Mr. Carter, who was a general assignee, and, being an officer of the state court, was bound to comply with its provisions with regard to inventories, bonds, etc. To what extent would this court interfere therewith? Why not go into that court, and have the matters determined? Possibly, that court had taken a different view of the question from what this court had taken. But parties came here, and asked to get by a decree of this court what they were satisfied they could not get from a decree of the local court. That is the first difficulty. Of course, if they had a constitutional right to come here, this court must uphold their right jurisdictionally. Now, what should be done? The original bill, as it stood here, as I have read it, only asked that this mortgage might be decreed a general assignment under the statute. This technical difficulty arose: the fund and the jurisdiction, as of a general assignment, were in the state court. Then, by consent of parties, Mr. Carter, the assignee of that tribunal, was made a party defendant. That was done to avoid confusion, etc. He came in. Now, the theory of the bill was to declare the mortgage an assignment. Suppose, technically

speaking, the court had so done, what becomes of the general assign. ment made a few minutes subsequently? If that was a general assignment, you can see at once what confusion would arise with regard to the matter. There was no allusion made in the original bill to that assignment, as I remember it, for any ruling against it, because that assignment was in compliance with the terms of the state statute, for the benefit of creditors generally; but the trouble was in the mind of the plaintiff in this bill that this mortgage covered the property, and left in the assignee only a few dollars. It was to accomplish the end which it was supposed the statute was designed to effect, viz., that the entire estate should be distributed *pro rata* among all creditors; and, as is usual in these equity bills, we have a general prayer for relief,—consequently the form that I suggested. I declared the mortgage void. It is not from any fraud or anything of the kind. I simply establish the validity of plaintiff's demand, and permit the mortgagee to share equally with the others, and let the assignee of the state court close out the estate accordingly. That is the only way I could accomplish the end. Now, certainly it is desirable that Brother BREWER may go over this. Therefore I cheerfully allow you to file your motion for a rehearing. I may say this preliminary question troubled me a good deal at first. Now, there is what I may call, under the decisions of the supreme court, an elemental doctrine, Where a fund is in possession of any other tribunal, this court will not interfere with it, and that is the first thought I had in this matter,—whether this case did not fall under those rulings, and whether, on the face of the bill, if the facts had been stated fully, I would not dismiss it at once, and leave the tribunal that had the custody of the estate to determine it. There was the question never presented. I expected it to be raised by the defense, and I would then have said, "No; we will not interfere with the custody of an estate in the hands of another tribunal."

*Mr. Goode.* That shows our *bona fides*.

*Treat, J.* It is not a question of *bona fides*, but of comity. Of course, as far as the case discloses, your client Holts—not speaking of the other one—is a creditor to the extent of the amount stated, and the only question is, what is the law? So far as the bill discloses, there is no question as to the custody of the estate. Otherwise we would have unseemly conflicts between the state and the federal courts.