## ANNISTON IRON & SUPPLY CO. et al. v. ANNISTON ROLLING MILL CO.

(District Court, N. D. Alabama, E. D. November 28, 1903.)

### No. 11.

**1. ACT OF BANKRUPTCY—PREFERENCE—SUBSTITUTION OF SECURITIES.**

Where a manufacturing corporation pledges materials under agreement that it may sell or use the same as it may need, and that in case of such sale or use it will pay cash, or transfer its equivalent in good accounts, and the company then disposes of the material, and within four months of its bankruptcy transfers accounts to the pledgee, a large amount of which was not realized from the disposition of the material, it constitutes a voidable preference, and an act of bankruptcy; the transaction not amounting to a mere substitution of securities.

**2. SAME—ASSIGNMENT FOR BENEFIT OF CREDITORS.**

A direct transfer to creditors, without the intervention of a trustee, is not an assignment for the benefit of creditors, constituting an act of bankruptcy.

Involuntary Bankruptcy.

Lapsley, Arnoled & Martin and Blackwell & Agee, for petitioners.

Knox, Aker & Blackmon, for defendant.

TOULMIN, District Judge. The specific act of bankruptcy alleged in the petition to have been committed by the defendant, the Anniston Rolling Mill Company, by which it is claimed it gave a preference to the Alabama National Bank of Birmingham, Ala., over its other creditors, is that the said defendant did, within four months next preceding the filing of the petition, transfer and assign to said bank a large amount of accounts due to it by a number of its debtors. A further act of bankruptcy alleged is that within said four months the defendant made a general assignment for the benefit of its creditors.

It appeared from the evidence in the case that on the 6th day of December, 1902, the Alabama National Bank of Birmingham, Ala., loaned to the defendant $8,000, for which the latter executed and delivered to the former its promissory note, payable on demand, and at the same time, as security for the payment of said note, executed and delivered to said bank a pledge of a large quantity of material, consisting of wrought, cast, and steel scrap pig iron, iron ore, etc., being all of the material then on hand at defendant's mill; that prior to this transaction, to wit, on November 6, 1902, the defendant made a lease to said bank of a certain part of the land on which defendant's mill plant was located, for the deposit of any material the defendant might from time to time pledge to said bank, and that the material covered by the aforesaid pledge was so deposited; that, at or about the time of the execution of said note and pledge, it was understood and agreed between the defendant and said Alabama National Bank, by their respective presidents, that the defendant should have the privilege to sell or use any or all of said material, as might be needed by it in the operation of its mill, and

that, in case of such sale or use by the defendant, it would pay the cash in settlement of its debt to the bank, or transfer and deliver to the bank its equivalent in good accounts. It further appeared from the evidence that the defendant did, from time to time, use or otherwise dispose of said material; that it did not pay any cash therefor, or on account of said note, but that on February 28, 1903, it transferred to the bank a large amount of open accounts against debtors of the defendant. Each account was transferred in writing on the account, as it appeared on the defendant's books, substantially in these words: "1903, Feb. 28th, transferred to Ala. Nat'l Bank to take place of material previously pledged to the bank." Of the accounts so transferred, a large amount of them accrued prior to December 6, 1902, the date of the loan and pledge referred to. The evidence tended to show that some of the accounts transferred were for some part of the product or finished work of said material; but which particular accounts were for such product or finished work, or to what extent such product or finished work entered into said accounts, or what amount of said accounts represented said product, the evidence did not show. The evidence showed that on the 28th day of February, 1903, the defendant was indebted to a large amount, other than that to the Alabama National Bank, and that among its other creditors were its operatives or employés, to whom it was then indebted in the sum of about $1,500, in the payment of which it had but recently defaulted.

The first question presented is whether the transfer of the accounts by defendant to the Alabama National Bank on the 28th day of February, 1903, was a preference given to said bank over the other creditors of the defendant, within the purview of the bankrupt act, although said transfers were made in compliance with the agreement to that effect theretofore made between the parties.

The said material was used and sold with the consent of the bank, but there was no agreement that it was to be used or sold for the benefit of the bank, and there was no covenant to account to the bank for the proceeds thereof. If there had been, there is no identifying the specific accounts representing such proceeds, and no such description of them that they can be identified. The accounts were not substituted or exchanged for the material, as security for the debt to the bank, contemporaneously with the use and sale of the material. They were never actually pledged to the bank until the transfer on the 28th day of February, 1903. Before that time there was a mere agreement to pledge. The accounts were never delivered to the bank, or set apart and treated as its property, until that day. The pledge was not completed until the date of the transfer. Besides, under the agreement, the defendant had the option to pay to the bank the cash, or to transfer and deliver to it the equivalent in good accounts. The defendant did not exercise this option until the 28th day of February, 1903. Until the transfer of the accounts on that day, they were the property of the defendant.

The contention of the defendant is that, by the transfer of the accounts, they took the place of the material, as an exchange of securi-

ties, and that therefore such transfer was not a preference, within the purview of the bankrupt act. An exchange of securities in four months of the proceedings in bankruptcy is not a preference, within the meaning of the bankrupt law, if the security given up is a valid one when the exchange is made, and if it be of equal value with the security substituted for it, or of not greater value. Sawyer v. Turpin, 91 U. S. 114, 23 L. Ed. 235. But, in my opinion, the facts in this case wholly fail to show an exchange of securities. At the time it was sought by the transfer of the accounts to substitute them for the material pledged as security for the debt, there was no material to be substituted—no security for which said accounts could be exchanged. The effect of the agreement permitting the defendant to use or sell the pledged material was to withdraw the material so used or sold from the operation of the pledge, and, so far as that material was concerned, to merely obligate the defendant to pay its debt to the bank with cash, or to transfer and deliver to it the equivalent in good accounts, which obligation was not performed until within four months prior to the petition in bankruptcy. In re Sheridan, 3 Am. Bankr. R. 554, 98 Fed. 406; In re Ball, 10 Am. Bankr. R. 564, 123 Fed. 164. I find that the transfer of said accounts was not an exchange of one species of property for another as a payment of, or as security for the payment of, the debt due by the defendant to the Alabama National Bank; that at the time of said transfer the defendant was insolvent; that said transfer was made within four months preceding the bankruptcy proceedings herein; that it gave a preference to said bank over other creditors of the defendant; and that it was designed and calculated to have such effect. Johnson v. Wald et al., 2 Am. Bankr. R. 84, and authorities cited in note pages 84 and 85.

My opinion is that the general assignment for the benefit of creditors alleged in the petition as an act of bankruptcy has not been maintained. A direct transfer to creditors, without the intervention of a trustee duly appointed, is not an assignment for the benefit of creditors. May v. Tenney, 148 U. S. 66, 13 Sup. Ct. 491, 37 L. Ed. 368; Davis v. Schwartz, 155 U. S. 631, 15 Sup. Ct. 237, 39 L. Ed. 289. An assignment directly to creditors, and not upon trust, is not a voluntary assignment for the benefit of creditors. Burrill on Assignments, § 122.

A decree declaring and adjudging the defendant a bankrupt is herewith made and filed.