## PILSON v. RODEFFER et al. (two cases).

### In re RODEFFER (two cases).

#### Nos. 3344, 3359.

Circuit Court of Appeals, Fourth Circuit.
Nov. 28, 1932.

J. W. H. Pilson, of Staunton, Va. (Cochran & Pilson, of Staunton, Va., on the brief), for appellant.

John T. Harris and Charles A. Hammer, both of Harrisonburg, Va., for appellees.

Before NORTHCOTT and SOPER, Circuit Judges, and MEEKINS, District Judge.

## NORTHCOTT, Circuit Judge.

This appeal brings up for review an order entered in April, 1932, in the District Court of the United States for the Western District of Virginia, in the case of In re Henry A. Rodeffer, bankrupt, holding that a certain paper writing executed by the bankrupt, before bankruptcy, was a deed of trust and not an assignment for the benefit of creditors.

Rodeffer, the bankrupt, a farmer, being heavily involved, and undoubtedly insolvent, on the 22d day of December, 1930, executed a deed to one N. I. Kagey, trustee, conveying practically all the property then possessed by him, including all his household and kitchen furniture, except such as was exempt to him under a Virginia statute, known as the "Poor Debtor's Law."

Rodeffer's wife joined in this deed; the pertinent parts of which are as follows:

"This Deed made this 22nd day of December, 1930, between Henry A. Rodeffer and Laura E. Rodeffer, his wife, of Weyers Cave, in the County of Augusta, State of Virginia, parties of the first part, and N. I. Kagey, Trustee, of Weyers Cave, in Augusta County, Virginia, party of the second part,

"Witnesseth:

"That in consideration of One Dollar ($1.00) cash in hand paid, the receipt whereof is hereby acknowledged, the said parties of the first part do grant and convey, with General Warranty of Title, unto N. I. Kagey, Trustee, the following described property, to-wit."

Then follows a description of 6 parcels of land, which description concludes: "Together with all buildings on said several tracts of land, with the appurtenances thereunto belonging, it being the intent and purpose to convey all of the above lands to the said trustee upon the trust hereinafter mentioned, and reference being here made to the several deeds referred to and the title papers therein referred to for greater certainty of description of the real estate herein conveyed."

Then follows a description of a Ford automobile and of some other physical personal property (of rather slight value), which is followed by:

"It being the intent and purpose to convey to the grantee all of the household and kitchen furniture which they possess with the exception of such as is exempt to them under the poor debtors law.

"In Trust Nevertheless to secure the payment of the following debts of the said Henry A. Rodeffer:

"First, the costs of administering this trust, including a five per cent commission to the trustee herein and a reasonable fee to the attorney preparing this deed; and, after the costs of the administration of this trust have been paid, to secure as first charges upon the said estate, real and personal, the debts listed as Class A herein, and as second charge and subordinate to the debts listed as Class A, those listed as Class B."

Then follow the numerous debts in "Class A," to be paid with interest and charges. The remainder of the instrument reads as follows:

"Class B.

"After the payment of the costs of administering this trust, which shall have first

been paid, and after the debts hereinbefore mentioned, which shall constitute Class A herein, have been paid in full, with the interest thereon, then whatever remains shall be applied to the payment of the debts due to the estate of the late John W. Carpenter, which shall constitute Class B under this deed. Which indebtedness to the said Carpenter estate is evidenced by the notes or bonds of Henry A. Rodeffer, grantor herein, the dates and amounts of which are unknown to him, but aggregate from $13,000 to $15,000.

"It being understood that all of the debts hereinbefore listed as Class A are of equal dignity and shall be paid in full before any part is applied to the debts listed as Class B.

"It is understood and the trustee herein named is directed to keep the buildings upon the properties herein conveyed and their contents insured in some solvent stock insurance company, with loss payable clause to the trustee herein as his interest may appear, and the cost of such insurance shall be treated as a part of the cost of administration of the estate and shall be paid as such.

"In the event the said notes herein secured are not paid at maturity, or, if renewed, said renewals, or any of them, are not paid at maturity, then, upon the request of any beneficiary secured hereunder, the trustee shall execute this deed by selling the real estate upon the following terms: One-third (1/3) of the purchase money cash upon the day of sale; and the remainder to be paid in one and two years thereafter, the purchaser to execute bonds therefor, with good security and the payment of such bonds to be secured by a Vendor's Lien in the deed of conveyance; and in the event that any creditor secured shall demand a sale of the property, then the personal property hereinabove described shall be sold for cash.

"Witness the following signatures and seals:

"[Signed]   Henry A. Rodeffer   [Seal]
"[Signed]   Laura E. Rodeffer   [Seal]."

It will be seen that Rodeffer intended that all his creditors should participate in the proceeds realized from the sale of his property, except the estate of John W. Carpenter. It developed that by inadvertence some small creditors were omitted from those listed in "Class A."

Carpenter, who was a creditor of Rodeffer to the extent of some $19,000, had died on December 9, 1930, and on December 15, following, Carpenter's administrator wrote Rodeffer requesting a conference in respect to his indebtedness to the estate. Rodeffer's response to this request was the making of the deed above set out, denying Carpenter's estate any participation in his assets.

The deed in question attempted to secure debts, listed in "Class A," amounting to more than $67,000, and there was finally realized from the bankrupt's property at the sale by the trustee, $28,827.

On December 22, 1930, the same day the deed was executed, Rodeffer, together with his son and son-in-law, executed a bill of sale to one Toppin, conveying cattle and other personal property for the purchase price of $5,019.17, of which sum one-half ($2,509.85) was to be paid to the bankrupt for his one-half interest in the property. The amount due the bankrupt was evidenced by two notes, one for $2,000, and the other for $509.85. On the same day, December 22, 1930, the said Rodeffer transferred the note for $509.85 to J. Givens Fulton, Jr., a creditor, and the note for $2,000 to Rebecca F. Early, his sister-in-law, in payment of a pre-existing debt owing by the said Rodeffer to her.

Again on the same day, December 22, 1930, Ivan E. Rodeffer, son of the said Henry A. Rodeffer, conveyed to the said N. I. Kagey, trustee, a large amount of personal property, consisting of live stock, farming machinery, feed, interest in growing crops, household furniture, chickens, etc., 'all of which property was described as being located on the farm occupied by the said grantor and owned by the said Henry A. Rodeffer and known as his Nicholas farm, to secure in "Class I" as a first lien certain notes owing to the Weyers Cave Bank, Incorporated, and others, aggregating $2,665, and in "Class II" subordinate to those above mentioned to secure the payment of a note or bond executed by Ivan E. Rodeffer to John W. Carpenter for the principal sum of $900.

On January 31, 1931, appellant, Carpenter's administrator, instituted a suit in the circuit court of Augusta county, Va., seeking to have the deed and bill of sale of December 22, 1930, construed as a general deed of assignment for the benefit of all creditors, and asking that any preference attempted to be created thereby be set aside.

On April 24, 1931, two days more than four months after the date of the execution of the deed in question, Henry A. Rodeffer filed a petition in bankruptcy, and on May 8, 1931, was adjudicated a bankrupt.

Appellant petitioned the bankruptcy court to be allowed to make Rodeffer and his trustee in bankruptcy parties defendant to

the suit in the state court, but this was denied on the ground that the bankruptcy court had "acquired absolute and exclusive jurisdiction of the property and person of the bankrupt." Appellant then petitioned the court to construe the deed in question as a general deed of assignment, and to set aside all preferences.

The statute relied upon by appellant is section 5278b of the Code of Virginia 1930, which reads as follows: "§ 5278b. *Deed to be Recorded; Trustee to Mail a Notice to Creditors of Execution of Deed and Sale Thereunder; Preferences Between Creditors.* —Hereafter whenever a deed of assignment for the benefit of creditors is executed, the same shall be forthwith recorded as are other deeds, and the trustee named therein, or the one substituted in the manner hereinafter prescribed, if no notice has been given, before selling under the deed of assignment, shall at least ten days before the sale mail a registered letter or notice to each of the creditors named in the said deed, advising of the execution thereof, and when, where and how the sale will be held, the terms thereof, and whether or not the deed provides that acceptance shall be in full satisfaction; and no creditor shall be preferred in the said deed except those given a lien or preference by law, or those having a valid lien upon the property conveyed, or some part thereof, and those having a lien shall be preferred only to the extent of the value of the property upon which they have a lien."

An examination of the deed discloses many significant facts that point to the true character of the instrument. The deed contains no defeasance clause, one of the essentials of a deed of trust which performs the functions of a mortgage in Virginia. It has been held that this omission alone is sufficient to show that an instrument claimed to be a mortgage and written in the form of a mortgage is not in fact what it is claimed to be.

"While the language of the instrument characterizes it as a mortgage, it is, in fact, not that kind of an instrument, for it does not contain a defeasance clause, which is one of the essentials of a mortgage. The instrument is, in effect, a conveyance to trustees for the payment of debts of creditors. It is an absolute appropriation of the property for that purpose, without a defeasance in the event of the payment of the debts by the grantor, and it, therefore, constitutes a general assignment for the benefit of creditors." Brown v. Wilkes, 153 Ark. 545, 241 S. W.

383, 385; compare Reagan v. Aiken, 138 U. S. 109, 11 S. Ct. 283, 34 L. Ed. 892.

The deed conveyed all or practically all the bankrupt's property. This has been held to make a like instrument a general assignment for the benefit of creditors. Eakes v. Bowman, 185 N. C. 174, 116 S. E. 403; Winner v. Hoyt, 66 Wis. 227, 28 N. W. 380, 385, 57 Am. Rep. 257.

The deed directs the trustee to keep up the insurance on the property, and on its face shows that the grantor intended, in effect, to "yield dominion of his entire estate and surrender it."

The deed listed all of the grantor's debts, except those inadvertently omitted, and was given to secure pre-existing indebtedness. There was no present consideration for the execution of the deed.

"An instrument which properly creates a trust for the benefit of all the assignor's creditors is an assignment, whatever may be its form." 5 C. J., p. 1036.

"Whenever an insolvent debtor, by any form of instrument or instruments, disposes of his entire property, not exempt, or substantially all of his property, for the benefit of a certain number of his creditors, then the transaction is in legal effect an assignment for the benefit of creditors, with a preference, and hence in violation of the statute, and void." Winner v. Hoyt, supra.

"But when, as here, a mortgage is made of the entirety of a large estate for a pre-existing debt, omitting only an insignificant remnant of property, such mortgage is, in effect, an assignment for the benefit of the creditors secured therein. To hold otherwise would be, in effect, to nullify the act." National Bank of Greensboro v. Gilmer, 116 N. C. 684, 22 S. E. 2, 5.

Another pertinent fact is that the bankrupt was totally and wholly insolvent at the time of the execution of the deed. This speaks emphatically as to the nature of the instrument.

Mr. Justice Harlan in the case of White v. Cotzhausen, 129 U. S. 329, 9 S. Ct. 309, 313, 32 L. Ed. 677, quoting from Judge McCrary in the case of Kerbs v. Ewing (C. C.) 22 F. 693, with approval, says: " 'No matter what the form of the instrument, where a debtor, being insolvent, conveys all his property to a third party to pay one or more creditors, to the exclusion of others, such a conveyance will be construed to be an assignment for the benefit of all the creditors; the preference being in contra-

vention of the assignment laws of this state.' "

And, again, 129 U. S. 329, 9 S. Ct. 309, 313, 32 L. Ed. at page 682, quoting with approval from Judge Treat in the case of Freund v. Yaegerman (C. C.) 26 F. 812, Mr. Justice Harlan says: " 'That under the statute of the state of Missouri concerning voluntary assignments, when property was disposed of in entirety or substantially—that is, the entire property of the debtor, he being insolvent—it fell within the provisions of the assignment law. The very purpose of the law was that no preference should be given. No matter by what name the end is sought to be effected, it is in violation of that statute. You may call it a mortgage, or you may make a confession of judgment, or use any other contrivance, by whatever name known, if the purpose is to dispose of an insolvent debtor's estate, whereby a preference is to be effected, it is in violation of the statute.' "

"Whether a particular instrument is or is not an assignment for the benefit of creditors is to be determined by its character and effect, rather than by its form, or the name which the parties see fit to give it. An instrument which properly creates a trust for the benefit of all the assignor's creditors is an assignment, whatever may be its form." 5 C. J., p. 1036.

See, also, Winner v. Hoyt, supra; Love v. Clayton (1926) 287 Pa. 205, 134 A. 422; Eakes v. Bowman, supra.

It is admitted that there is no decision of the highest court of Virginia since the passage of the statute directly in point, and attorneys for appellant rely mainly on White v. Cotzhausen, supra, where a full discussion of the principles here controlling will be found, and where the court said:

"But of what avail will the statute be in securing equality among the creditors of a debtor who, being insolvent, has determined to yield the dominion of his entire estate, and surrender it for the benefit of creditors, if some of them can be preferred by the simple device of not making a formal assignment, and permitting them, under the cover or by means of conveyances, bills of sale, or written transfers, to take his whole estate on account of their respective debts, to the exclusion of other creditors? * * *

"Shall a failing debtor be allowed to employ indirect means to accomplish that which the law prohibits to be done directly? These questions must be answered in the negative. They could not be answered otherwise without suggesting an easy mode by which the entire object of this legislation may be defeated. * * *

"We only mean, by what has been said, that when an insolvent debtor recognizes the fact that he can no longer go on in business, and determines to yield the dominion of his entire estate, and in execution of that purpose, or with an intent to evade the statute, transfers all, or substantially all, his property to a part of his creditors, in order to provide for them in preference to other creditors, the instrument or instruments by which such transfers are made, and that result is reached, whatever their form, will be held to operate as an assignment, the benefits of which may be claimed by any creditor not so preferred * * *.' "

Attorneys for appellees rely on Union National Bank of Chicago v. Bank of Kansas City, 136 U. S. 223, 10 S. Ct. 1013, 34 L. Ed. 341, but an examination of that case and the Cotzhausen Case does not show them to be in conflict, and both cases are cited with approval in Bamberger v. Schoolfield, 160 U. S. 159, 16 S. Ct. 225, 40 L. Ed. 374.

The Illinois statute construed in the Cotzhausen Case is as follows: "Every provision in any assignment hereafter made in this State providing for the payment of one debt or liability in preference to another shall be void, and all debts and liabilities within the provision of the assignment shall be paid pro rata from the assets thereof." Section 13 of Voluntary Assignment Act in force July 1, 1877 (1 Starr & C. Ann. St. 1885, c. 72, par. 49).

A court of bankruptcy is governed by equitable principles and endeavors to do equity whenever possible. Equity looks through the form to the substance. All the circumstances surrounding the execution of the deed as well as the deed itself paint a picture startlingly distinct. One so plain and unmistakable that "he who runs may read."

The bankrupt, wholly insolvent, confronted by the demand for settlement by his principal creditor, conveyed all or practically all of his property to the trustee to be disposed of and the proceeds to be distributed among all his creditors but one. This the bankrupt did without any expectation or even hope of ever redeeming any of the property by the payment of the debts enumerated in the deed. Within two days after the four months fixed by statute for the setting aside of preferences he filed voluntarily a petition in bankruptcy. Being a farmer, he could not have been thrown into involuntary bankruptcy. Nothing could make the true char-

acter of the transaction plainer. The deed in effect and substance was a general assignment, and the preferences sought to be made excluding only the appellant, the principal creditor, were forbidden by the Virginia statute, and are void.

The ruling of the court below as to the transfer of the $2,000 note to bankrupt's sister-in-law was not assigned as error, and cannot be considered.

The order of the court below is reversed, and this cause is remanded for further proceedings in accord with this opinion.

Reversed.