In the Matter of WESTERN AUTO AS-
SOCIATE STORE, Waynesboro, Vir-
ginia, a partnership composed of Dale
O. Walter, Jr., general partner, and
John O. McLean, limited partner, Bank-
rupt.

No. 66–BK–73–H.

United States District Court
W. D. Virginia,
Harrisonburg Division.

Dec. 9, 1968.

Carter R. Allen, Waynesboro, Va., trustee in bankruptcy.

George R. Aldhizer, Jr., Wharton, Aldhizer & Weaver, Harrisonburg, Va., for Western Auto Associate Store.

Thomas J. Wilson, Harrisonburg, Va., referee in bankruptcy.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes before this court on a petition by Western Auto Supply Company, (hereafter Western) a Delaware Corporation, to review the orders of the referee in bankruptcy dated November 9, 1967. The orders in effect overrule Western's motion to vacate an adjudication of bankruptcy and overrule Western's motion to dismiss a show cause order why it should not turn over certain property in its possession to the trustee.

The facts are these: The Western Auto Associate Store in Waynesboro, Virginia was owned and operated as a partnership composed of Dale O. Walters, Jr., a general partner and John O. McLean, a limited partner. On June 22, 1966, the Western Auto Associate Store by the joint action of the partners (hereafter bankrupt) entered into what is titled a "purchase agreement" with Western whereby Western agreed to buy and bankrupt to sell certain described secured accounts, merchandise, fixtures and equipment of the bankrupt's store. The relevant parts of this purchase agreement will be discussed later in this opinion. Pursuant to the agreement the bankrupt was to supply a list of its creditors to Western in order that Western could give notice of the transfer in compliance with the Virginia Bulk Sales statutes. In the notice sent to the creditors was also a notice that escrow agents were to be established and that a copy of an escrow agreement could be examined at a particular law office in Waynesboro, Virginia. The purpose of the escrow agents was to receive the purchase price of the transferred property to satisfy the claims of creditors.

As contemplated by the purchase agreement, which apparently was not sent to the creditors, Western was first to offset the debt owing it by the bankrupt before any monies were placed in the hands of the escrow agents. The creditors were to file their claims with Mr. Humes T. Franklin and Talmage N. Cooley, in Waynesboro, who were the proposed escrow agents. Although the purchase agreement contemplated the establishment of escrow agents and notice was sent to the creditors of such intentions, no escrow agreement was ever executed.

On July 11, 1966, a creditors' petition was filed in this court by First and Merchants National Bank, Waynesboro, Virginia; Nelson-Roanoke Corporation, Roanoke, Virginia; and Jennings-Shepherd, Inc., Roanoke, Virginia, with the proper allegations and praying that the Western Auto Associate Store, composed of the partnership be adjudged a bankrupt. These creditors alleged debts owing in the amount of $11,000.00 to the First and Merchants National Bank, $2,420.64 to the Nelson-Roanoke Corporation and $2,731.10 to Jennings-Shepherd, Inc. As the requisite act of bankruptcy the petition alleges that the Western Auto Associate Store committed a preferential transfer to a creditor, Western, for an account of an antecedent debt while insolvent, the effect of such transfer being that such creditor will obtain a greater percentage of their debt than other creditors of the same class. As an additional act of bankruptcy, the petition alleges that the Western Auto Associate Store made a general assignment of all assets for the benefit of the creditors of the partnership.

Upon hearing the case, the referee, on October 6, 1966, finding that the Western Auto Associate Store had made a general assignment, which assignment was made within four months of the filing of the creditors petition, adjudicated the partnership of Dale O. Walters and John O. McLean, trading as Western Auto Associate Store, a bankrupt. There was no objection to this adjudica-

tion. The bankrupt was ordered to file a statement of affairs and schedules as provided by law.

At the first meeting of the creditors on November 3, 1966, it appeared that Western, upon the filing of the petition in bankruptcy on July 11, 1966, held under the purchase agreement dated June 22, 1966, merchandise, fixtures, equipment, supplies and accounts receivable belonging to the bankrupt. The referee pursuant to The Bankruptcy Act, § 70(a) (8), 11 U.S.C. § 110(a) (8) issued a show cause order to Western to show why it should not be required to turn over the property to the trustee, or to account for it otherwise. The order is dated November 4, 1966.

On November 17, 1966, the date set for a hearing on the order, Western filed a motion with the referee to dismiss the show cause order and also a statement objecting to summary jurisdiction over property in its possession. Western was allowed time in which to prepare a memorandum in support of its motion.

On December 23, 1966, Western filed a memorandum in support of its motion to dismiss which included a motion to vacate the adjudication of bankruptcy. A memorandum in opposition to the above motions was filed on January 18, 1967, on behalf of the petitioning creditors and trustee. By orders dated November 9, 1967, the motion to vacate the adjudication of bankruptcy was denied and Western, having failed to show cause why it should not turn over the property in its possession to the trustee or otherwise account for it, was ordered to complete such transfer not later than December 9, 1967.

Western filed a petition in this court on November 27, 1967, seeking review of the referee's orders overruling the motion to vacate the adjudication of bankruptcy and the motion to dismiss the show cause order. The appropriate records were certified to this court and filed on September 30, 1968.

The referee presents the following questions for review:

1. The first question presented in this review is whether or not a creditor, appearing specially, may attack the adjudication of bankruptcy.

2. The next question presented in this review is whether or not the agreement of June 22, 1966, between Walters and McLean [partnership] on the one part and Western Auto Supply Company constituted a general assignment for the benefit of creditors as contemplated by Section 70(a) (8) and made the property covered by the same subject to the summary jurisdiction of the Bankruptcy Court.

First, we will address the question of whether a creditor, appearing specially, may attack an adjudication of bankruptcy. Section 18(b) of the Bankruptcy Act, 11 U.S.C. § 41(b) provides:

b. The bankrupt and, in the case of a petition against a partnership, any general partner or, in the case of a petition in behalf of a partnership, any general partner not joining therein, may appear and plead to the petition within five days after the return day or within such further time as the court may allow.

Petitioner argues that Section 18(b) merely states that the bankrupt may appear but does not state that a creditor of or a purchaser from the bankrupt may not object. It is further argued that the Federal Rules of Civil Procedure, pursuant to General Order No. 37, should be followed in bankruptcy proceedings insofar as the rules are not inconsistent with the Bankruptcy Act or with the General Orders. Rule 60(b) of the Federal Rules of Civil Procedure (hereafter FRCP) provides that upon motion the court may relieve a party from a final judgment for the following reasons: " * * * (4) the judgment is void; * * * [and] (6) any other reason

justifying relief from the operation of the judgment."

■ We agree with the referee and affirm his decision that a creditor has no standing to attack or oppose an adjudication of bankruptcy. The right to oppose an adjudication in bankruptcy when an involuntary petition has been filed is governed by the express language of Section 18(b) of the Bankruptcy Act. Prior to the Act of 1938, Section 18(b) read as follows:

> b. The bankrupt *or any creditor* may appear and plead to the petition within five days after the return day or within such further time as the court may allow.

The words *"or any creditor"* were deleted as a result of the Act of 1938. 2 Collier on Bankruptcy § 18.01 (14th Ed. 1968). The reason for the deletion was stated in the House Report on the Act:

> The right of creditors to file an answer and oppose the petition has been eliminated in the amendment of section 18(b), and section 59(f) has been changed to correspond to this amendment. A creditor should not be permitted to oppose an adjudication; invariably, the motive of such a creditor is to protect a preference or to retain some other undue advantage at the expense of the other creditors, contrary to the fundamental purpose of the Act—an equitable distribution among all creditors. House Report No. 1409 on H.R. 8046, 75th Cong., 1st Sess. (1937) 17.

Because a creditor may not oppose an adjudication of bankruptcy in an involuntary proceeding, In re Carden, 118 F. 2d 677 (2d Cir.1941), cert. denied, McClave & Co. v. Carden, 314 U.S. 647, 62 S.Ct. 91, 86 L.Ed. 519 (1941); In re Hewitt Grocery Co., 33 F.Supp. 493 (D. Conn.1940), it follows logically that a creditor may not move to set aside the adjudication by presenting defenses to the adjudication that may not, under Section 18(b), be submitted prior to the adjudication. To allow such an attack would be to permit a creditor to do indirectly that which may not be done directly, thus defeating the intent of Congress in amending Section 18(b) of the Bankruptcy Act. See In re Carden, 118 F.2d 677 (2d Cir.1941) cert. denied, McClave & Co. v. Carden, 314 U.S. 647, 62 S.Ct. 91 (1941).

■■ Neither do we think that resort to the FRCP would be proper under the particular circumstances involved. The FRCP are to be followed, in accordance with General Order No. 37, so long as they are not inconsistent with the Bankruptcy Act. However to allow the use of the FRCP, as petitioner urges, would be to enlarge and extend a provision of the Bankruptcy Act contrary to the intent of Congress in limiting, if not abolishing, the right of a creditor to oppose an adjudication of bankruptcy in an involuntary proceeding. Accordingly we refuse to apply the FRCP to allow a creditor to attack an adjudication of bankruptcy under Section 18(b) contrary to the intent of Congress in amending that Section.

The second question presented for review is whether the "purchase agreement" between Western and the bankrupt constituted a general assignment for the benefit of creditors and made the transferred property subject to the summary jurisdiction of the court under Section 70(a) (8) of the Bankruptcy Act. Petitioner argues that there was no general assignment and therefore the bankruptcy court had no jurisdiction to adjudicate the partnership bankrupt or to exercise summary jurisdiction over the property in the possession of Western.

■ It cannot be doubted that the court had jurisdiction of the involuntary petition when filed and jurisdiction over the bankrupt is equally clear. Petitioner argues that no act of bankruptcy occurred hence the court did not gain jurisdiction. We disagree. Even if the order of adjudication was erroneous, this alone did not deprive the court of the jurisdictional power to make it. In re Carden, 118 F.2d 677 (2d Cir.1941);

In re Shoesmith, 135 F. 684 (7th Cir. 1905). An adjudication of bankruptcy will not be set aside even though the particular act of bankruptcy was not properly alleged or proved. In re Larson, 124 F.2d 121 (9th Cir.1941), cert. denied, Larson v. Lane, 315 U.S. 814, 62 S.Ct. 797, 86 L.Ed. 1212 (1942); In re Lynan, 127 F. 123 (2d Cir.1903). The adjudication of bankruptcy is a judgment *in rem* binding upon all interested parties regardless of whether they appeared in the adjudication proceedings. This refers strictly to the status of the person adjudicated a bankrupt and not to subsidiary questions arising out of the administration of the bankrupt's estate. Myers v. International Trust Co., 263 U.S. 64, 44 S.Ct. 86, 68 L.Ed. 165 (1923); 2 Collier on Bankruptcy § 18.43 (14th Ed.1968). Thus we affirm the referee's decision as being properly within the jurisdictional limits of the Bankruptcy Court. His decision is binding, and *res judicata*, as to the world, pertaining to the status of the bankrupt.

The remaining question pertains to the exercise of summary jurisdiction by the bankruptcy court. In the present case Western had acquired possession of the disputed property before the filing of the petition in bankruptcy under a "purchase agreement." Because of this Western claims the status of an adverse claimant in possession. The referee held that the "purchase agreement" constituted a general assignment for the benefit of creditors and pursuant to § 70(a) (8) ordered the property transferred to the trustee. Section 70(a) vests the title of bankrupt's property in the trustee as of the filing of the petition and § 70(a) (8) provides that:

(8) property held by an assignee for the benefit of creditors appointed under an assignment which constituted an act of bankruptcy, which property shall, for the purposes of this title, be deemed to be held by the assignee as the agent of the bankruptcy and *shall be subject to the summary jurisdiction of the court.*

The grounds for adjudicating the status of the bankrupt, in this case an assignment for the benefit of creditors, although binding and final as relating to the status of the bankrupt, is not determinative of subsidiary claims. In Myers v. International Trust Co., supra, 263 U.S. at 73, 44 S.Ct. at 88, Chief Justice Taft said:

An adjudication of bankruptcy, or of discharge therefrom, is a judgment *in rem* and is binding on, and *res judicata* as to all the world, only in respect of the status of the bankrupt, and is not conclusive as to the findings of fact or subsidiary questions of law on which it is based except as between parties to the proceedings or privies thereto.

However, upon examination of the "purchase agreement," we agree with the referee's decision that the agreement constituted a general assignment for the benefit of creditors and as a result made the property covered by the agreement subject to the summary jurisdiction of the Bankruptcy Court pursuant to 70(a) (8) of the Act. Whether an instrument is or is not an assignment for the benefit or creditors is to be determined by its character and effect rather than the form or the name that the parties attach to the transaction. Pilson v. Rodeffer, 61 F.2d 976 (4th Cir.1932). It would serve no useful purpose to set forth the specific provisions of the "purchase agreement." They, in effect, provide that Western either "purchases" or has an option "to purchase" all of the merchandise, fixtures, equipment, furniture, tools and accounts receivable from the bankrupt's business. Petitioner argues that some $30,000 worth of equipment was not transferred, such as $20,000 worth of retail installment contracts, $10,000 worth of automotive equipment, certain other merchandise and one or more trucks. The court notes that such items, with the exception of the trucks, were covered in the purchase agreement with the option in Western to "purchase" such

property under favorable circumstances. The effect of the transfer was to dispose the bankrupt's estate of any property that would have present value and be subject to the claims of general creditors. What is important in determining whether an instrument constitutes an assignment for the benefit of creditors is what the instrument gives the parties the power to do rather than the actual exercise of that power. "The Act is unequivocal. No provision requires that a general assignment must be effective, or operative, or indefeasible, or even valid, in order to constitute its making an act of bankruptcy. The apparent policy * * * is that a debtor making a general assignment reveals his intent, and has made an actual attempt, to arrange for the liquidation of his estate in a way contrary to the system established in the Bankruptcy laws." Wohlschlaeger v. Duncan, 157 F.2d 933, 934 (8th Cir. 1946). The purport of the "purchase agreement" was to arrange for the liquidation of the bankrupt's estate contrary to the bankruptcy laws. The agreement by its express terms contemplates the closing of the bankrupt's business, the very reason for the existence of the partnership.

 The "purchase agreement" contemplated that Western would offset its debt owing from the bankrupt and that the remainder of the "purchase price" was to be paid to escrow agents. The notice to the creditors informing them of the "purchase" also informed them of escrow agents and an escrow agreement, although apparently no escrow agreement was ever executed. A general assignment for the benefit of creditors may contain provisions prescribing priorities and conditions concerning distribution. In re Saxer, 34 F.2d 39 (E.D.Mich.1929); In re Cutler & John, 228 F. 771 (E.D.N.C.1916). However, such a preference is expressly prohibited by Virginia law. "[N]o creditor shall be preferred in the said deed except those given a lien or preference by law. * * *" Pilson v. Rodeffer, 61 F.2d 976, 979 (4th Cir.1932); Va.Code Ann. § 55–156 (Repl. Vol. 1959). The fact that a provision of the general assignment is invalid does not destroy the character of the assignment. See Wohlschlaeger v. Duncan, 157 F.2d 933 (8th Cir.1946). Thus the preference contemplated by the "purchase agreement" does not prevent the transaction from being a general assignment.

 Finally petitioner argues that a general assignment cannot be made directly to creditors on the theory that no trust has been created. Missouri-American Elect. Co. v. Hamilton-Brown Shoe Co., 165 F. 283 (8th Cir. 1908); Anniston Iron and Supply Co. v. Anniston Rolling Mill Co., 125 F. 974 (N.D.Ala.1903). No provision of the Bankruptcy Act prohibits a general assignment from being made to a creditor. Moreover, in Virginia, a creditor can be a trustee. Such an arrangement does not affect the validity of the assignment, but merely the power of the trustee to act as such. Gordon v. Cannon, 18 Gratt. (59 Va.) 387, 401 (1868).

From a review of the record we are satisfied that the referee's orders, dated November 9, 1967, which in effect overrule Western's motion to vacate the adjudication of bankruptcy and to dismiss the show cause order, are correct and in accordance with the law.

It is therefore adjudged and ordered that the referee's orders of November 9, 1967 be affirmed.

The clerk is directed to certify copies of this opinion and judgment to the referee and to counsel of record.